# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 1 6 2014

Madsen, C.J.
CHIEF JUSTICE



This opinion was filed for record
at 8:00 a.m. on Jan. 16, 2014

Ronald R. Carpenter
Supreme Court Clerk



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| JARYD SCHROEDER, | |
| Appellant, | NO. 87207-4 |
| v. | |
| STEVEN WEIGHALL, M.D., and COLUMBIA BASIN IMAGING, P.C., a Washington corporation, | EN BANC |
| Respondents, | Filed __JAN 1 6 2014__ |
| and | |
| KADLEC REGIONAL MEDICAL CENTER, | |
| Defendant. | |

GORDON McCLOUD, J.—Petitioner Jaryd Schroeder challenges the constitutionality of RCW 4.16.190(2), which eliminates tolling of the statute of limitations for minors in the context of medical malpractice claims. We hold that RCW 4.16.190(2) violates article I, section 12 of the Washington State Constitution,

and we therefore reverse the trial court's summary judgment order dismissing Schroeder's medical malpractice action.

## FACTS

On May 22, 2001, Schroeder sought treatment from the respondents, Dr. Steven Weighall and Columbia Basin Imaging. Schroeder was nine years old at the time and suffered from headaches, nausea, dizziness, weakness in his legs, and double vision. He underwent an MRI (magnetic resonance imaging), which Weighall reviewed and found to be normal. Schroeder's symptoms persisted.

On either November 9 or 19, 2009,[1] when he was 17, Schroeder underwent another MRI. This time the radiologist who reviewed the image found an Arnold Chiari Type I Malformation, a condition in which brain tissue protrudes into the spinal canal. The radiologist also reviewed the 2001 MRI and concluded that the condition had been present to the same extent at that time.

On January 13, 2011, the day before his 19th birthday, Schroeder filed a medical malpractice action against Weighall, Columbia Basin Imaging, PC, and a third party subsequently dismissed by stipulation. Weighall asserted that the action

---

[1] The record contains conflicting information as to the date of the second MRI, but the difference is irrelevant to the questions presented here.

was barred by the statute of limitations codified at RCW 4.16.350 and subject to the minority tolling exemption codified at RCW 4.16.190(2).[2]

RCW 4.16.350 provides that a lawsuit alleging medical malpractice must be filed within three years of the "act or omission" giving rise to the claim or one year after the patient "discovered or reasonably should have discovered" that the injury was caused by the act or omission in question. The statute also imputes a parent's or guardian's knowledge to the injured minor. RCW 4.16.350. RCW 4.16.190(1) provides that the statute of limitations applicable to *any* legal action shall be tolled during a plaintiff's minority, incompetency, or incarceration, but RCW 4.16.190(2) *eliminates* tolling for minors in medical malpractice actions.

Schroeder and his mother discovered Weighall's alleged omission in November 2009. On that date, Schroeder was still a minor. If not for RCW 4.16.190(2), the one-year statute of limitations applicable to his claim would have tolled until his 18th birthday on January 14, 2010. In reality, the combined effect of

---

[2] Weighall also argued that the action was barred by RCW 4.16.350(3), the eight-year statute of repose for medical malpractice actions, but the parties subsequently agreed to stay the proceedings pending this court's decision in *Unruh v. Cacchiotti*, 172 Wn.2d 98, 257 P.3d 631 (2011). In that decision, we held that RCW 4.16.350(3) applied only prospectively. *Unruh*, 172 Wn.2d at 110-11. When Weighall read Schroeder's first MRI in 2001, RCW 4.16.350 was not in effect, having been ruled unconstitutional by this court in *De Young v. Providence Medical Center*, 136 Wn.2d 136, 141, 960 P.2d 919 (1998). The legislature reenacted the statute in 2006, but under *Unruh* it did not begin to run for Schroeder until 2006 and thus did not bar his action in January 2011.

RCW 4.16.350 and .190(2) placed Schroeder's January 13, 2011 filing date about two months outside the statute of limitations. On that basis, the trial court dismissed his action.[3]

Schroeder appealed the dismissal directly to this court, arguing that RCW 4.16.190(2) violated article I, section 10 and article I, section 12 of the Washington State Constitution.

## ANALYSIS

### *Standard of Review*

We review the constitutionality of a statute de novo. *Kitsap County v. Mattress Outlet*, 153 Wn.2d 506, 509, 104 P.3d 1280 (2005) (citing *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 114, 937 P.2d 154, 943 P.2d 1358 (1997)). Because we conclude that RCW 4.16.190(2) violates article I, section 12, we do not address Schroeder's article I, section 10 challenge.

### *Article I, Section 12*

Article I, section 12 of the Washington Constitution provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than

---

[3] If RCW 4.16.190(2) had not applied, the one-year statute of limitations would have tolled until Schroeder's 18th birthday. Had this occurred, Schroeder's filing date would have fallen just within the one-year statute of limitations applicable to claims discovered after the typical three-year statute has run. RCW 4.16.350(3).

municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." As we have noted in several recent cases, this court has construed article I, section 12 as "substantially similar" to the federal equal protection clause for many, many years. *Seeley v. State*, 132 Wn.2d 776, 788, 940 P.2d 604 (1997) (collecting cases). In *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 145 Wn.2d 702, 735, 42 P.3d 394 (2002) (*Grant County* I), *rev'd in part by Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 812, 83 P.3d 419 (2004) (*Grant County* II), however, we also recognized that article I, section 12 differed from and was more protective than the federal equal protection clause and required a very different analysis in certain situations. The *Grant County* cases acknowledged our state constitution's particular concern with the "undue political influence" exercised by a privileged few and drew on early decisions addressing that concern through the reasonable ground analysis. *Grant County* II, 150 Wn.2d at 805-11.[4]

---

[4] These early decisions include *Sherman Clay & Co. v. Brown*, 131 Wash. 679, 680-81, 231 P. 166 (1924) (invalidating ordinance that required sellers of secondhand goods to keep them for 10 days prior to sale but exempted sellers of "'stoves, furniture, or the total contents of any room or house bought on the premises where such goods have been in use'" (quoting Seattle Ordinance 45727)); *State v. W.W. Robinson Co.*, 84 Wash. 246, 146 P. 628 (1915) (invalidating statute that exempted cereal and flouring mills from act imposing onerous conditions on other similarly situated persons and corporations); *City of Seattle v. Dencker*, 58 Wash. 501, 108 P. 1086 (1910) (invalidating ordinance that imposed tax on sale of goods by automatic devices but not on sale of goods by hand); *City of Spokane v.*

1. RCW 4.16.190(2) Grants an "Immunity" under Article I, Section 12

In *Grant County* I, we held that article I, section 12, unlike the federal equal protection clause, applies to special interest legislation—laws that confer a benefit on a privileged or influential minority. *Grant County* I, 145 Wn.2d at 731. In the second *Grant County* case, we modified that holding, recognizing that that independent "privileges" analysis applies only where a law implicates a "privilege" or "immunity" as defined in our early cases distinguishing the "'fundamental rights'" of state citizenship. *Grant County* II, 150 Wn.2d at 812-13 (quoting *State v. Vance*, 29 Wash. 435, 458, 70 P. 34 (1902)).

After *Grant County* II, we have subjected legislation to a two-part test under this "privileges" prong of article I, section 12 analysis. First, we ask whether a challenged law grants a "privilege" or "immunity" for purposes of our state constitution. *Grant County* II, 150 Wn.2d at 812. If the answer is yes, then we ask whether there is a "reasonable ground" for granting that privilege or immunity. *Grant* I, 145 Wn.2d at 731.

---

*Macho*, 51 Wash. 322, 98 P. 755 (1909) (invalidating city ordinance that imposed criminal liability on employment agencies but not on other similarly situated business); and *In re Habeas Corpus for Camp*, 38 Wash. 393, 80 P. 547 (1905) (invalidating ordinance that prohibited the peddling of produce within city limits but exempted farmers who grew the produce themselves).

Not every benefit constitutes a "privilege" or "immunity" for purposes of the independent article I, section 12 analysis. Rather, the benefits triggering that analysis are only those implicating "fundamental rights . . . of . . . state . . . citizenship." *Vance*, 29 Wash. at 458.

The benefit that RCW 4.16.190(2) confers is limited liability—an immunity from suits pursued by certain plaintiffs. This court has long recognized that the privileges and immunities contemplated in article I, section 12 include the right to pursue common law causes of action in court.[5] Thus, at least where a cause of action derives from the common law, the ability to pursue it is a privilege of state citizenship triggering article I, section 12's reasonable ground analysis. A law limiting the pursuit of common law claims against certain defendants therefore grants those defendants an article I, section 12 "immunity."

This court has also recognized that "[m]edical malpractice claims are fundamentally negligence claims, rooted in the common law tradition." *Putman v.*

---

[5] *Vance*, 29 Wash. at 458 (fundamental rights of state citizenship include "the rights to the usual remedies to collect debts and to enforce other personal rights"); *Alton V. Phillips Co. v. State*, 65 Wn.2d 199, 204, 396 P.2d 537 (1964) (law that "expands the [only one particular] plaintiff's right of recourse in our courts" violates article I, section 12); *Cotten v. Wilson*, 27 Wn.2d 314, 317-20, 178 P.2d 287 (1947) (under article I, section 12, the legislature must have a "'reasonable ground'" for increasing a personal injury plaintiff's burden in actions against a particular class of defendant (quoting *State ex rel. Bacich v. Huse*, 187 Wash. 75, 80, 59 P.2d 1101 (1936), *overruled on other grounds by Puget Sound Gillnetters Ass'n v. Moos*, 92 Wn.2d 939, 603 P.2d 819 (1979))).

7

*Wenatchee Valley Med. Ctr.,* 166 Wn.2d 974, 982, 216 P.3d 374 (2009). RCW 4.16.190(2) limits the ability of certain plaintiffs—those whose injuries occurred during childhood—to bring medical malpractice claims. It therefore grants an immunity (and burdens a privilege) triggering the reasonable ground test under article I, section 12.

2. There Is No Reasonable Ground For Limiting Medical Malpractice Defendants' Liability to Patients Injured During Minority

The article I, section 12 reasonable ground test is more exacting than rational basis review. Under the reasonable ground test a court will not hypothesize facts to justify a legislative distinction. *See, e.g., City of Seattle v. Rogers,* 6 Wn.2d 31, 37-38, 106 P.2d 598 (1940) (striking down regulatory exemption despite city's argument that the exempted party constituted "a class by itself"). Rather, the court will scrutinize the legislative distinction to determine whether it *in fact* serves the legislature's stated goal. *See, e.g., State ex rel. Bacich v. Huse,* 187 Wash. 75, 82, 59 P.2d 1101 (1936) (striking down provision in regulatory statute that grandparented in protections for those holding gillnetting licenses in 1932-33, in part because it did "not accomplish the purpose suggested by [the State's] argument"), *overruled on other grounds by Puget Sound Gillnetters Ass'n v. Moos,* 92 Wn.2d 939, 603 P.2d 819 (1979)).

This court addressed a statute similar to RCW 4.16.190(2) in *DeYoung v. Providence Medical Center*, 136 Wn.2d 136, 141, 960 P.2d 919 (1998), where we held that an eight-year statute of repose applicable to medical malpractice claims violated article I, section 12. In the pre-*Grant County* cases we applied rational basis review and found that the statute of repose could not survive even that most deferential form of scrutiny. *DeYoung*, 136 Wn.2d at 149. While we recognized that addressing escalating insurance rates was a legitimate legislative goal, we also found clear evidence in the legislative record that the challenged statute would not advance that goal in any appreciable way. *Id.* at 149-50.

The evidence in question was a report by the National Association of Insurance Commissioners finding that less than one percent of all insurance claims nationwide were made by adults pursuant to incidents of malpractice occurring more than eight years prior. *Id.* at 149. In light of that evidence we concluded that the "relationship between the goal of alleviating any medical insurance crisis and the class of persons affected by the eight-year statute of repose is too attenuated to survive rational basis scrutiny." *Id.*

Under *DeYoung*, the relationship of the class of persons affected by RCW 4.16.190(2) to the goal of reducing insurance costs must be deemed "too attenuated to survive [even] rational basis scrutiny" unless RCW 4.16.190(2) will have a

significantly greater effect on insurance premiums than the eight-year statute of repose did. *Id.* The respondents in this case offer no evidence for this greater effect, but they speculate that it might have motivated the legislature to enact the minority tolling statute: "[T]he legislature, mindful of *DeYoung*, [might have] believed that . . . medical malpractice claims of nondisabled minors are numerous enough that eliminating tolling as to their claims would materially affect [medical malpractice insurance] rates." Br. of Resp'ts at 43 n.29.

Such speculation might suffice under rational basis review. *DeYoung*, 136 Wn.2d at 148 ("the rational basis standard may be satisfied where the 'legislative choice . . . [is] based on rational speculation unsupported by evidence or empirical data'" (quoting *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 125 L. Ed. 2d 211 (1993))). But our reasonable ground analysis does not permit us to hypothesize facts. *Huse*, 187 Wash. at 82; *Rogers*, 6 Wn.2d at 37. If we are to uphold RCW 4.16.190(2), that law must be justified in fact as well as theory. Neither the respondents nor the legislative record provides any factual support for the theory that RCW 4.16.190(2) will reduce insurance premiums.

In addition to their insurance premium theory, the respondents advance another argument on behalf of the minority tolling statute: that it serves the important purpose of limiting stale medical malpractice claims. The respondents assert that

stale claims are particularly burdensome in the medical malpractice context, where defendants are subject to rapidly changing standards of care. They note (correctly) that the legislature has expressed its interest, in this context, in preventing "even one defendant [from] answer[ing] a stale claim." Br. of Resp'ts at 39 n.26 (quoting LAWS OF 2006, ch. 8, § 301).[6]

We recognize—as we did in *DeYoung*—that "compelling a defendant to answer a stale claim is a substantial wrong, []and setting an outer limit to operation of the discovery rule is [thus] an appropriate aim." *DeYoung*, 136 Wn.2d at 150 (citing *Ruth v. Dight*, 75 Wn.2d 660, 665, 453 P.2d 631 (1969)). But RCW 4.16.190(2) is not addressed to stale claims generally, it is (at best) addressed to stale claims arising from medical malpractice injuries to minors. Thus, the principle for which the statute really stands is not that "compelling even one defendant to answer a stale claim is a substantial wrong." LAWS OF 2006, ch. 8, § 301. Rather, it is that a stale claim is a substantial wrong *when it arises from a medical incident that occurred when the plaintiff was under 18*. According to this legislative scheme, a stale claim is *not* a substantial wrong—at least, not substantial enough to warrant

---

[6] The legislature also included this statement of purpose in its 2006 amendment to RCW 4.16.350, which reinstated the eight-year statute of repose struck down in *DeYoung*.

11

preventative legislation—when it is brought by a plaintiff who was unable to sue at the time of injury for any reason other than minority.

The respondents attempt to explain this distinction by arguing that "parents or guardians may, and often do, sue on an injured child's behalf." Br. of Resp'ts at 19. According to the respondents, an injured minor's parent or guardian has a "vested interest in recover[y]," which prevents RCW 4.16.190(2) from having any significant preclusive effect on minors' medical malpractice claims. Wash. Supreme Court oral argument, *Schroeder v. Weighall*, No. 87207-4 (May 16, 2013), at 39 min., 28 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org.

This explanation, of course, directly conflicts with the respondents' assertion that the minority tolling statute will eliminate so many medical malpractice claims that insurance rates will drop as a result. If the statute is to be justified on the basis that it will greatly reduce medical malpractice claims, it cannot also be justified on the ground that it will not prevent very many plaintiffs from having their day in court. If it is to be justified on the basis that it is a substantial wrong to permit even one stale medical malpractice claim to proceed, then there can be no rational explanation for the legislature's failure to eliminate tolling for other incompetent plaintiffs.

3. RCW 4.16.190(2) Also Raises Concerns Underlying Our State Equal Protection Cases

RCW 4.16.190(2) also raises concerns other than special interest favoritism. While the statute clearly confers a benefit on one group of citizens, it also has the potential to burden a particularly vulnerable minority. Our *Grant County* analysis emphasized article I, section 12's concern with special interest legislation, but it did not overrule our long line of article I, section 12 cases addressing laws that burden vulnerable groups. In those cases—our state equal protection cases based on article I, section 12—we have characterized article I, section 12 analysis as "substantially similar" to federal equal protection analysis. *Seeley*, 132 Wn.2d at 787 n.7.

Those state equal protection cases therefore hold that article I, section 12 requires us to apply different levels of scrutiny depending on whether the challenged law burdened a suspect class, a fundamental right, an important right or semisuspect class, or none of the above. *E.g., State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010). Those cases clearly establish that we apply intermediate scrutiny to laws that burden both "'an important right and a semi-suspect class not accountable for its status.'" *Id.* (internal quotation marks omitted) (quoting *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 609, 192 P.3d 306 (2008) (quoting *Madison v. State*, 161 Wn.2d 85, 103, 163 P.3d 757 (2007))); *see also*

*Griffin v. Eller*, 130 Wn.2d 58, 65, 922 P.2d 788 (1996) (citing *In re Runyan*, 121 Wn.2d 432, 448, 853 P.2d 424 (1993)); *Westerman v. Cary*, 125 Wn.2d 277, 294, 892 P.2d 1067 (1994); *State v. Schaaf*, 109 Wn.2d 1, 17-19, 743 P.2d 240 (1987). RCW 4.16.190(2) burdens an important right—a "privilege" for purposes of the article I, section 12 reasonable ground analysis. *See supra*, pp. 6-8. We have recognized the significance of this interest in other contexts as well,[7] and it is undeniably "important" for purposes of our state equal protection analysis.

Notably, RCW 4.16.190(2) also has the potential to burden a particularly vulnerable population not accountable for its status. In *Schaaf*, we declined to hold that children were a semisuspect class, but we did so because we concluded that children in general were more socially integrated—and thus better represented in the democratic process—than the "'discrete and insular minorities'" considered suspect classes for purposes of federal equal protection analysis. *Schaaf*, 109 Wn.2d at 17-19 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 472 n.24, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (Marshall, J., concurring in part and dissenting

---

[7] *E.g., Unruh*, 172 Wn.2d at 111 n.9 (noting that challenge to RCW 4.16.190(2) raises "'compelling'" state constitutional questions about the right of access to the courts (quoting *Gilbert v. Sacred Heart Med. Ctr.*, 127 Wn.2d 370, 378, 900 P.2d 552 (1995))); *Hunter v. N. Mason High Sch.*, 85 Wn.2d 810, 814, 539 P.2d 845 (1975) ("right to be indemnified for personal injuries is a substantial property right, . . . in many cases fundamental to the injured persons' physical well-being and ability to continue to live a decent life").

14

in part)). While RCW 4.16.190(2) applies by its terms to minors generally, it is evident from the arguments presented in this case that the law places a disproportionate burden on the child whose parent or guardian lacks the knowledge or incentive to pursue a claim on his or her behalf. Courts in numerous other jurisdictions have recognized this problem, noting that statutes analogous to RCW 4.16.190(2) have the greatest impact on children in the foster care system, children whose parents are themselves minors, and children whose parents are simply unconcerned. *See Piselli v. 75th St. Med.*, 371 Md. 188, 215-19, 808 A.2d 508 (2002) (collecting cases). It goes without saying that these groups of children are not accountable for their status. Thus, even if minors generally do not constitute a semisuspect class under article I, section 12, the group of minors most likely to be adversely affected by RCW 4.16.190(2) may well constitute the type of discrete and insular minority whose interests are a central concern in our state equal protection cases.

## CONCLUSION

For the foregoing reasons, we find that RCW 4.16.190(2) violates article I, section 12 of the Washington Constitution. We therefore reverse the trial court's order dismissing Schroeder's claim.

_____
                                        Gonz. McCol, J.

WE CONCUR:

_____
Madsen, C.J.

_____            _____

_____            _____
                                             Stephens, J.

                                             _____
                                             Wiggins, J.

_____            _____
Fairhurst, J.                                González, J.

16

No. 87207-4

J.M. JOHNSON, J. (dissenting)—Statutes of limitation are critical to the effective functioning of our civil litigation system. Such statutes provide finality in situations where memories are likely to have faded, records have been misplaced, and it is onerous to prove the relative standard of care at the time of the incident. Statutes of limitation further encourage claimants to bring actions in a timely manner while evidence is still fresh.

Although tort claims are subject by the legislature to various statutes of limitation, RCW 4.16.190 provides a tolling privilege to minors with nonmedical malpractice claims and incapacitated adults. This type of privilege is permissible where, as here, there is a reasonable ground for granting it. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 812, 83 P.3d 419 (2004) (*Grant County* II); *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 145 Wn.2d 702, 731, 42 P.3d 394 (2002) (*Grant County* I).

In crafting the tolling exception in RCW 4.16.190(2), the legislature properly considered the differences between minors and adults, as well as the special circumstances facing medical malpractice defendants. RCW 4.16.190(2), therefore, comports with article I, section 12 of the Washington Constitution. Furthermore, the statute is rationally related to the legitimate state objective of decreasing medical malpractice costs and reducing the number of stale claims. Consequently, the statute comports with the Fourteenth Amendment to the United States Constitution. The plain language of RCW 4.16.190(2) and RCW 4.16.350 operate to bar Jaryd Schroeder's claim. Because I would affirm summary judgment, I dissent.

ANALYSIS

Statutes of limitations in general operate to immunize alleged tortfeasors from lawsuits once claims become stale. Many courts, including this one, have recognized that the legislature has a legitimate interest in protecting potential defendants against stale claims. *See, e.g., Stenberg v. Pac. Power & Light Co.*, 104 Wn.2d 710, 714, 709 P.2d 793 (1985) (noting that statutes of limitation have the valid goal of protecting against stale claims); *Ruth v. Dight*, 75 Wn.2d 660, 664-66, 453 P.2d 631 (1969) (recognizing for various reasons that "compelling one to answer stale claims in the courts is in

itself a substantial wrong"); *Deen v. Egleston*, 597 F.3d 1223, 1233 (11th Cir. 2010) (observing that "[d]efending law suits is hard; defending malpractice suits is harder; and defending old malpractice suits is harder still"); *Owens v. White*, 380 F.2d 310, 315 (9th Cir. 1967) (acknowledging that justice requires that physicians not be faced with stale claims because the passage of time eliminates their ability to present a meritorious defense).

RCW 4.16.190 has historically tolled statutes of limitation during a period of incompetency, which covers those under the age of 18. RCW 4.16.190 and RCW 4.16.350 were amended in 2006 as part of a complicated legislative compromise reached by our legislators, then-Governor Gregoire, the trial lawyers, physicians, hospital administrators, and government staff. *Waples v. Yi*, 169 Wn.2d 152, 168, 234 P.3d 187 (2010) (J.M. Johnson, J., dissenting). The 2006 amendment package was part of a legislative effort to manage the problems created by what the legislature deemed to be excessive medical malpractice and other litigation. *Id.* The legislature considered the 2006 amendments to address "'one of the most important issues facing the citizens of Washington State.'" *Id.* (quoting LAWS OF 2006, ch. 8, § 1). As a result, tolling no longer applies to minors with medical malpractice claims pursuant to RCW 4.16.190(2).

-3-

A.   RCW 4.16.190(2) Comports With Article I, Section 12 of the Washington State Constitution

In the article I, section 12 privileges and immunities context, legislation is analyzed under a two-part test: (1) whether the challenged law grants a privilege or immunity under our state constitution, *Grant County* II, 150 Wn.2d at 812, and, (2) if yes, whether there is a reasonable ground for granting that privilege or immunity, *Grant County* I, 145 Wn.2d at 731. In this case, the majority is correct that RCW 4.16.190 grants a privilege or immunity. It is, however, based on reasonable ground. Consequently, the statute comports with article I, section 12.

I agree with the majority that RCW 4.16.190 grants a privilege or immunity by affecting certain plaintiffs' ability to bring a cause of action after his or her incapacity is terminated. Majority at 7; *Madison v. State*, 161 Wn.2d 85, 119-21, 163 P.3d 757 (2007) (J.M., Johnson, J., concurring) (setting forth the rights that the term "privileges and immunities" has historically encompassed, including the right "to institute and maintain actions of any kind in the courts of the state" (quoting *Corfield v. Coryell*, 6 F. Cas. 546, 551-52 (C.C.E.D. Pa.1823) (No. 3,230))). Although I conclude that RCW 4.16.190 grants a privilege, I firmly disagree with the majority's assertion that there is no reasonable ground for the lines drawn by the statute. *See* majority at 8-12.

In performing a privileges and immunities analysis, we must be extremely cautious to ensure that the classes are framed correctly. Here, it is possible to define the classes in two different ways. The majority adopts Schroeder's untenable framing of the classes—that RCW 4.16.190 grants healthcare providers an immunity from defending against stale claims originating from injuries to minors. This framing of the classes defies logic and does violence to article I, section 12 privileges and immunities. By framing the classes in such a way, the majority overlooks the plain fact that statutes of limitation are the rule and tolling provisions are the exception.

RCW 4.16.190 does not create an impermissible immunity from lawsuits. Instead, it establishes a permissible privilege of tolling for minors with nonmedical malpractice tort claims and incapacitated adults. Framing the classes in this way is more in line with the plain language of the statute, which is phrased in terms of granting tolling to potential plaintiffs rather than exempting healthcare providers from lawsuits.

> *The grounds for granting a tolling privilege to minors with nonmedical malpractice tort claims and incapacitated adults are reasonable*

The legislative purpose in passing RCW 4.16.190(2) and the other 2006 amendments was two-fold: (1) to assist in solving a crisis in the medical

insurance industry and (2) to prevent the substantial wrong of making even one defendant have to answer a stale claim. LAWS OF 2006, ch. 8, §§ 301-302. It goes without saying that the longer the gap between the act, omission, or injury and the filing of a lawsuit, the more likely it is that memories will fade, records will be misplaced, and witnesses will go missing. Stale claims increase costs associated with litigation—costs that are ultimately passed on to patients. This justification rests on common sense and the economics of litigation rather than hypothetical facts beyond the scope of the reasonable ground test.

Eliminating the stale claims of those exempted from tolling by RCW 4.16.190(2) should reduce the total number of stale claims defendants must face. It is important to recognize, however, that eliminating all categories of tolling would have this same effect. Consequently, there must be a reasonable ground for this seemingly incremental approach.

The immediate and obvious distinction between incapacitated minors and incapacitated adults is that minors are much more likely than adults to have someone supervising them who has legal authority to act on their behalf. The legislature can reasonably assume that minors' interests are being protected by a parent or guardian. *See Harlfinger v. Martin*, 435 Mass. 38, 47

n.14, 754 N.E.2d 63 (2001) (upholding a statute eliminating tolling for minors and finding that the legislature may reasonably assume that the interests of minors will be protected by their guardians). Parents and guardians are endowed with the power under our state laws to make a myriad of decisions on behalf of their children.

Moreover, there is a valid distinction between medical malpractice and other tort claims. In revising the tolling provision, the legislature simply accounted for scientific and technological realities present in medical malpractice cases. Massachusetts' highest court has wisely noted that

> [t]he problem of defending stale medical malpractice claims is further exacerbated by the fact that the standard of care is itself subject to rapid and dramatic change, fueled by advances in medical science and technology. From a defendant's perspective, demonstrating the standard of care of many years past, and that the defendant's treatment of the plaintiff did not deviate from it, can be very difficult when, by modern standards, the same care would represent a major deviation.

*Harlfinger*, 435 Mass. at 43 n.8 (rejecting an equal protection challenge to a statute eliminating tolling for minors). As a consequence, the harm done by requiring a healthcare provider to defend against stale claims is often more profound than for other categories of tortfeasors. The distinctions underlying RCW 4.16.190(2) are, without a doubt, real and substantial.

Ultimately, RCW 4.16.190(2) represents the legislature's pursuit of a specific policy agenda. The legislature is the governmental body responsible for identifying policy goals and implementing them. Unlike this court, the legislature possesses mechanisms for gathering public input such as hearings and committees. The United States Supreme Court has long recognized "that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977). We should accordingly refrain from second-guessing the legislative motivation behind RCW 4.16.190(2) unless we have evidence to justify such suspicion. We do not. I would, therefore, hold that RCW 4.16.190(2) is constitutional under article I, section 12.

B.   The Majority Properly Refrains from Addressing the Freestanding Article I, Section 10 Argument

The majority properly declines to address the argument that RCW 4.16.190(2) runs afoul of article I, section 10 of the Washington State Constitution, deciding the case solely on article I, section 12 grounds. *See* majority at 4. Although I would hold that RCW 4.16.190(2) comports with article I, section 12, I would also decline to address any freestanding article I, section 10 claim.

Nowhere does Schroeder argue that article I, section 10 alone provides a sufficient basis for invalidating RCW 4.16.190(2). Amicus curiae Washington State Association for Justice Foundation (WSAJF) alone raises the argument that article I, section 10 provides a freestanding basis to invalidate RCW 4.16.190(2). Br. of Amicus Curiae WSAJF at 4-5.

As a general rule, we will decide a case only on the basis of the issues argued by the parties in their briefs. RAP 12.1(a); *see Salstrom's Vehicles, Inc. v. Dep't of Motor Vehicles*, 87 Wn.2d 686, 690, 555 P.2d 1361 (1976). Consequently, we avoid basing our decisions on issues raised only by amici curiae. *E.g., State v. Clarke*, 156 Wn.2d 880, 894, 134 P.3d 188 (2006); *Rabon v. City of Seattle*, 135 Wn.2d 278, 291 n.4, 957 P.2d 621 (1998); *Schuster v. Schuster*, 90 Wn.2d 626, 629, 585 P.2d 130 (1978). For this reason, I would decline to decide the case on the basis of a freestanding article I, section 10 claim.

C. RCW 4.16.190(2) Comports With the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

Schroeder contends that RCW 4.16.190(2) violates the equal protection clause of the Fourteenth Amendment. The federal equal protection clause requires that similarly situated persons receive equal treatment. *State v. Harner*, 153 Wn.2d 228, 235, 103 P.3d 738 (2004). The majority also raises

-9-

concerns under our state equal protection cases. Majority at 13-15. Our state equal protection cases have characterized our state analysis as "substantially similar" to federal equal protection analysis. *Seeley v. State*, 132 Wn.2d 776, 787 n.7, 940 P.2d 604 (1997).

In analyzing state and federal equal protection challenges, we apply one of three levels of scrutiny: strict scrutiny, intermediate scrutiny, or rational basis. *Harris v. Charles*, 171 Wn.2d 455, 462, 256 P.3d 328 (2011) (quoting *Harner*, 153 Wn.2d at 235-36).

Here, we must apply rational basis scrutiny. Minors are not a suspect class or a semisuspect class. *State v. Schaaf*, 109 Wn.2d 1, 19, 743 P.2d 240 (1987); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *Tunstall v. Bergeson*, 141 Wn.2d 201, 226, 5 P.3d 691 (2000) (reaffirming that rational basis applies to juvenile claims (citing *In re Boot*, 130 Wn.2d 553, 572-73, 925 P.2d 964 (1996))). Schroeder concedes that rational basis must be applied. Br. of Pet'r at 30.

In order to pass rational basis scrutiny, "the legislative classification is upheld unless the classification rests on grounds wholly irrelevant to the achievement of legitimate state objectives." *Harner*, 153 Wn.2d at 235-36. This test is extremely deferential to legislative determinations. Those

attacking a classification that is reviewed under the rational basis standard "have the burden 'to negat[e] every conceivable basis which might support it.'" *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S. Ct. 1001, 35 L. Ed. 2d 351 (1973)).

The legislature did not single out RCW 4.16.190(2) when stating the purposes behind its 2006 amendments. It is clear, however, from the statement of purpose attached to RCW 4.16.350 that the legislative intent was to help reduce medical malpractice insurance rates and prevent defendants from having to defend against stale claims. *See* LAWS OF 2006, ch. 8, §§ 301-302. To the extent that healthcare providers face fewer claims, it is likely that their medical malpractice insurance premiums will decrease. The benefits of such premium decreases will be passed on to Washington state citizens. The legislature undoubtedly has broad authority and discretion over this type of social and economic policy. *See Beach Commc'ns*, 508 U.S. at 313. RCW 4.16.190(2) is rationally related to legitimate state objectives. Accordingly, RCW 4.16.190(2) does not violate the equal protection clause of the Fourteenth Amendment or state equal protection embodied in article I, section 12.

CONCLUSION

When crafting RCW 4.16.190(2), the legislature properly considered the differences between minors and adults, as well as the unique circumstances surrounding medical malpractice defense. The statute passes muster under both the reasonable ground test of article I, section 12, as well as rational basis scrutiny required by the equal protection clause of the Fourteenth Amendment. The plain language of RCW 4.16.190(2) and RCW 4.16.350 operates to bar Schroeder's claim. Accordingly, this court should affirm summary judgment.

Evans, J.