IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 59484-6-II |
| J.S., | |
| | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – JS appeals the trial court's order committing her for 90 days of involuntary treatment based on a jury verdict that was not unanimous. The Involuntary Treatment Act (ITA), chapter 71.05 RCW, permits a nonunanimous jury to find that involuntary commitment is warranted. JS argues that the ITA violates the equal protection clause of the United States and Washington constitutions because it permits nonunanimous jury verdicts, while sexually violent predators may only be involuntarily committed by a unanimous jury verdict under the Sexually Violent Predator Act (SVPA), chapter 71.09 RCW.

We hold that JS's involuntary commitment pursuant to a nonunanimous jury verdict does not violate equal protection because there is a rational basis for the different jury unanimity rules under the ITA and the SPVA. Accordingly, we affirm the trial court's involuntary commitment order.

FACTS

In February 2024, a designated crisis responder filed an initial petition seeking to detain JS for involuntary mental health treatment. The petition alleged that JS was gravely disabled because she was wandering the streets at night and sleeping in the lobby of a retirement community. The petition also stated that JS insisted that her significant other, who passed away in 2023, still was alive. The State subsequently filed a petition for 14 days of involuntary treatment, which was granted after a hearing.

The State then filed a petition for 90 days of additional involuntary treatment under RCW 71.05. JS requested a jury trial with 12 jurors. At the end of trial, the jury returned a verdict in favor of committing JS for 90 additional days of involuntary treatment. Only 11 out of the 12 jurors agreed on the verdict. JS did not object to the nonunanimous verdict or raise an equal protection challenge.

The trial court entered an order committing JS for 90 days of involuntary treatment. JS appeals the trial court's involuntary commitment order.

ANALYSIS

A.      LEGAL PRINCIPLES – INVOLUNTARY COMMITMENT

The ITA governs the temporary detention for evaluation and treatment of persons with mental health disorders. RCW 71.05.010(1); RCW 71.05.280. The ITA gives the State the ability to petition for an additional 90 day period of involuntary commitment if a person who had been involuntarily committed for a short period of time exhibits a behavioral impairment that renders them gravely disabled. RCW 71.05.280(4); RCW 71.05.320(1)(a). An ITA detainee has a statutory right to a jury trial for the hearing on this petition. RCW 71.05.300(2), .310; *see also* MPR 3.3(a).

RCW 71.05.310 provides that an ITA commitment trial "shall in all respects accord with the constitutional guarantees of due process of law and the rules of evidence under RCW 71.05.217." RCW 71.05.217 permits the Supreme Court to promulgate court rules governing these proceedings. And those rules provide that the hearing "shall be proceeded with as in any other civil action." MPR 3.4(a).

Article I, section 21 of the Washington Constitution states that the legislature may provide for less than unanimous verdicts in civil matters. *See Dunner v. McLaughlin*, 100 Wn.2d 832, 844, 676 P.2d 444 (1984). RCW 4.44.380 provides for nonunanimous verdicts in civil actions, including a verdict of 10 jurors in agreement with the verdict where the jury is composed of 12 jurors. Commitment by a nonunanimous verdict does not violate an ITA detainee's due process rights. *McLaughlin*, 100 Wn.2d at 845.

The SVPA governs the involuntary commitment of sexually violent predators (SVPs), people who "have personality disorders and/or mental abnormalities which are unamenable to existing mental illness treatment modalities and those conditions render them likely to engage in sexually violent behavior." RCW 71.09.010. Commitment under the SVPA is appropriate for people "who do not have a mental disease or defect that renders them appropriate for the existing involuntary treatment act, chapter 71.05 RCW." RCW 71.09.010. The State may seek commitment under the SVPA only in certain circumstances, including when a person is released from incarceration for a sexually violent offense, found incompetent to stand trial for a sexually violent offense, found not guilty by reason of insanity for a sexually violent offense, and where someone who has previously committed a sexually violent offense commits an overt act of a sexually violent nature. RCW 71.09.030(1).

The SVPA provides that if a jury decides whether a person is an SVP, the verdict must be unanimous. RCW 71.09.060(1).

B.     EQUAL PROTECTION CHALLENGE

JS argues that her involuntary commitment by a nonunanimous jury verdict violates the equal protection clauses in both the United States and Washington constitutions. We disagree.

1.    Legal Principles

" 'The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.' " *State v. S.D.H.*, 17 Wn. App. 2d 123, 138, 484 P.3d 538 (2021) (quoting *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020)). Similarly, article I, section 12 of the Washington Constitution " 'requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' " *State v. Min Sik Kim*, 7 Wn. App. 2d 839, 845, 436 P.3d 425 (2019) (quoting *State v. Simmons*, 152 Wn.2d 450, 458, 98 P.3d 789 (2004)). Our analysis under the federal and state equal protection clauses is substantially similar. *Schroeder v. Weighall*, 179 Wn.2d 566, 577, 316 P.3d 482 (2014).

" 'Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.' " *Washington Food Indus. Ass'n v. City of Seattle*, 1 Wn.3d 1, 24, 524 P.3d 181 (2023) (quoting *In re Det. of Dydasco*, 135 Wn.2d 943, 951, 959 P.2d 1111 (1998)).

The first step in examining an equal protection violation claim is to determine whether the person claiming the violation is similarly situated to another person or group of people. *S.D.H.*, 17 Wn. App. 2d at 138. To successfully assert an equal protection claim, a party must

"show that he is a member of a class of similarly situated individuals and that he received disparate treatment because of his membership in that class." *Id.* at 139. If two classes of people are not similarly situated, an equal protection analysis is not required, and the proponent's equal protection claim fails. *Id.*

If the person alleging the violation is similarly situated to the other individuals, the next step is to review the statutory scheme according to the relevant basis of review, as determined by the rights involved in the classification. *See id.* "We apply strict scrutiny if the individual is a member of a suspect class or the state action threatens a fundamental right, intermediate scrutiny if the individual is member of a 'semisuspect' class or the state action threatens 'important' rights, and the rational basis test if neither strict scrutiny nor intermediate scrutiny is applied." *Id.* (quoting *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006)).

2. Similarly Situated

JS argues that people involuntarily committed under the ITA and under the SVPA are similarly situated because people in both classes have mental health disorders. Whether people who have mental health disorders like JS who are facing commitment under the ITA are similarly situated with people facing commitment under the SVPA may be an open question. However, the State does not address this issue. Therefore, we assume without deciding that people facing commitment under the ITA and under the SVPA are similarly situated for purposes of an equal protection claim.

3. Level of Scrutiny

JS argues that we must apply either strict scrutiny or intermediate scrutiny because civil commitment burdens the fundamental right to physical liberty and because people with mental

health disorders should be considered at least a quasi-suspect class. The State argues that we should apply rational basis review. We agree with the State.

The Supreme Court consistently has applied rational basis review for equal protection challenges relating to civil commitment statutes that treat classes of people differently. *E.g.*, *In re Det. of M.W.*, 185 Wn.2d 633, 664, 374 P.3d 1123 (2016); *In re Det. of Stout*, 159 Wn.2d 357, 375, 150 P.3d 86 (2007); *In re Det. of Thorell*, 149 Wn.2d 724, 752, 72 P.3d 708 (2003); *In re Det. of Turay*, 139 Wn.2d 379, 410, 986 P.2d 790 (1999). This court has applied rational basis review for equal protection challenges in cases involving involuntary commitment statutes. *In re Det. of P.P.*, 6 Wn. App. 2d 560, 574-75, 431 P.3d 550 (2018); *In re Det. of Ross*, 114 Wn. App. 113, 117-18, 56 P.3d 602 (2002).

JS contends that the line of cases applying rational basis to equal protection challenges involving civil commitment statutes should be abandoned because the United States Supreme Court's decision in *Foucha v. Louisiana*, 504 U.S. 71, 112 S. Ct. 1780, 118 L. Ed.2d 437 (1992), recognized a fundamental right of freedom from physical restraint. The Court in *Foucha* stated, "Freedom from physical restraint being a fundamental right, the State must have a particularly convincing reason . . . for such discrimination against insanity acquittees who are no longer mentally ill." *Id.* at 86.

However, *Turay*, *Thorell*, *Stout*, and *M.W.* were decided long after *Foucha*. We are bound to follow the precedent of our Supreme Court. *Bogen v. City of Bremerton*, 18 Wn. App. 2d 676, 684, 493 P.3d 774 (2021).

JS also cites to *State v. Hirschfelder*, where the court stated that strict scrutiny applies to laws affecting fundamental rights. 170 Wn.2d 536, 550, 242 P.3d 876 (2010). But physical liberty is not a fundamental right for purposes of equal protection. *State v. Reynolds*, 21 Wn.

App. 2d 179, 199, 505 P.3d 1174 (2022). And our Supreme Court has stated that "[w]hen a physical liberty interest alone is involved in a statutory classification, this court applies the deferential rational relationship test." *State v. Manussier*, 129 Wn.2d 652, 673, 921 P.2d 473 (1996).

We conclude that rational basis review applies to JS's equal protection claim.

### 4. Rational Basis Analysis

JS does not provide any argument regarding rational basis review for the different jury unanimity rules for ITA and SVPA trials because she argues that strict or intermediate scrutiny should apply. The State asserts that there is a rational basis for the different jury unanimity rules. We agree with the State.

Rational basis review requires " 'that there is a rational basis for distinguishing the class from others.' " *P.P.*, 6 Wn. App. 2d at 574 (quoting *M.W.*, 185 Wn.2d at 664). Rational basis review is a "relaxed and highly deferential" standard. *P.P.*, 6 Wn. App. 2d at 574. "[A] legislative classification will be upheld unless it rests on grounds entirely unrelated to the achievement of legitimate state objectives." *Id.* at 575. The party challenging the classification has the burden of showing that the classification is "entirely arbitrary." *Id.*

Here, members of the SPVA class have greater procedural protection – the requirement that a jury verdict be unanimous – than members of the ITA class. The issue is whether JS can show that this distinction violates equal protection under rational basis review.

This court has stated, "Considerations involved with the SVPA – that is, whether a person qualifies as a sexually violent predator – are very different than whether a person should be committed for treatment of behavioral health disorders under the ITA." *In re Det. of C.A.A.*, 31 Wn. App. 2d 816, 830, 553 P.3d 88 (2024).

There are significant differences between commitment under the ITA and commitment under the SVPA. First, a person can be committed under the ITA only for 90 days or an additional 180 days. RCW 71.05.320(1)(a), (6)(a). Commitment under the SPVA is indefinite, *In re Det. of Belcher*, 196 Wn. App. 592, 602, 385 P.3d 174 (2016), and an SVP will remain detained until "[t]he person's condition has so changed that the person no longer meets the definition of a sexually violent predator" or release to a less restrictive alternative is appropriate. RCW 71.09.060(1). The legislature contemplated that "the treatment needs of this population are very long term." RCW 71.09.010; *State v. McCuistion*, 174 Wn.2d 369, 379-81, 275 P.3d 1092 (2012) (discussing procedures under the SVPA).

Second, a person committed under the ITA is placed in a facility certified for treatment. RCW 71.05.320(1)(a). An SVP is detained in a "secure facility" operated by the Department of Social and Health Services. RCW 71.09.060(1). And the legislature has acknowledged that "the treatment modalities for this population are very different than the traditional treatment modalities for people appropriate for commitment under the involuntary treatment act." RCW 71.09.010.

Third, a person committed under the ITA must be reevaluated at the end of the 90 or 180 day period. RCW 71.05.320(1), (4)(d). "At the expiration of each period, the burden is on the State to bring a new petition for an additional commitment period. If the State declines to do so or does not meet its burden, the individual is automatically released." *M.W.*, 185 Wn.2d at 652. An SVP is entitled to a new evaluation only once a year. RCW 71.09.070(1). And "[t]he procedures for potential release of an individual committed under the SVPA are far more complicated." *C.A.A.*, 31 Wn. App. 2d at 831 n.5.

Fourth, the ITA requires a jury to consider whether less restrictive alternatives (LRAs) are appropriate before a person may be committed. RCW 71.05.320(1)(a), (2). The SVPA limits consideration of LRAs at the initial commitment trial, and limits what LRAs may be considered by a court when they are considered. RCW 71.09.060(1). For example, SVPs must secure a treatment provider and housing before being released to an LRA. RCW 71.09.092(1)-(3); *see In re Det. of Skinner*, 122 Wn. App. 620, 630-32, 94 P.3d. 981 (2004) (rejecting equal protection challenge based on this distinction).

Fifth, ITA detainees may avoid commitment if they, in good faith, seek voluntary treatment. RCW 71.05.230(2); *see also* RCW 71.05.050(1). This option is not available to SVPs. *See Ross*, 114 Wn. App. at 117-21 (rejecting equal protection challenge based on this distinction).

These differences between the ITA and the SVPA demonstrate that commitment under the SPVA is significantly more oppressive than under the ITA. The legislature's objective in adopting different jury unanimity rules is to make it more difficult to commit a person under the SPVA than under the ITA. Therefore, we conclude that there is a rational basis for giving members of the SVPA class more procedural protection than members of the ITA class.

Accordingly, we hold that JS's equal protection challenge to the ITA fails.

## CONCLUSION

We affirm the trial court's involuntary commitment order.

No. 59484-6-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
PRICE, J.