959 P.2d 1111 (1998)
135 Wash.2d 943
In the Matter of the DETENTION OF Kenneth DYDASCO.
The STATE of Washington, Respondent,
v.
Kenneth DYDASCO, Petitioner.
No. 65732-7.
Supreme Court of Washington, En Banc.
Argued May 19, 1998.
Decided August 6, 1998.
*1112 Public Defender Association, Richard S. Lichtenstadter, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Gerald A. Smith, Deputy King County Prosecutor, Seattle, for Respondent.
DOLLIVER, Justice.
Petitioner claims he received insufficient notice of the State's intention to seek a 180-day involuntary commitment. We agree and hold those facing 180-day commitments are entitled to at least 3 days' notice of further commitment proceedings.
On January 26, 1995, the State petitioned the King County Superior Court to commit Petitioner, Kenneth Dydasco, to 90 days of involuntary treatment. The superior court commissioner entered an agreed order committing Petitioner to 90 days of "[l]ess [r]estrictive [t]reatment," as opposed to intensive treatment. Clerk's Papers at 1. He was required to keep all scheduled appointments and follow the treatment recommendations of his case manager at Seattle Mental Health Institute, take all prescribed medications, refrain from acts or threats of harm to self, others, or property, and follow his doctor's recommendations regarding his diabetes. The 90 days were to end on April 26, 1995.
According to his father, Dydasco "was behaving quite normally, [being] quite civil with his brothers and sisters, not making any problems for the family[,]" until the week before April 26. Verbatim Report of Proceedings at 40. During that last week, Dydasco missed two of his appointments with his case manager at Seattle Mental Health Institute and was not taking his medication. In addition, his behavior changed. Dydasco's father stated:
He became quite irritable, throws a temper tantrum when he doesn't get what he wants, several outbursts, quite loud, talks to himself almostwell, maybe a couple hours every night while everyone else was asleep. Keeps waking us up talking about inanimate objects, about Jesus Christ. Most of the time what he [said] didn't make sense.
Verbatim Report of Proceedings at 40-41. Petitioner's father further testified his son would bang on the wall, use obscenities, and "throw a fit" when medication was mentioned. Verbatim Report of Proceedings at 41.
On Monday, April 24, 1995, Saskia von Michalofski, a mental health professional, petitioned to revoke Dydasco's less restrictive treatment on the grounds he had failed to abide by the terms of the January 26, 1995, order and had suffered a substantial deterioration in functioning. A hearing on the revocation petition was scheduled for Wednesday, April 26, 1995. On Tuesday, April 25, 1995, in a separate petition, Ms. von Michalofski sought "180 DAY LESS RESTRICTIVE ALTERNATIVE TREATMENT," pursuant to RCW 71.05.320, on the grounds Dydasco "continue[d] to be gravely disabled." Clerk's Papers at 14. That petition was also to be heard on April 26, 1995, the final day of Dydasco's 90-day treatment.
Dydasco moved to dismiss the petition for 180-day treatment, alleging it was not timely filed. He relied on RCW 71.05.300, which requires petitions for 90-day treatment to be filed at least 3 days before the expiration of a 14-day period of intensive treatment, but *1113 says nothing about petitions for 180-day commitments. The mental health commissioner, Bonnie Canada-Thurston, presided over the April 26, 1995, hearing. In deciding the petition for revocation of Dydasco's 90-day less restrictive treatment, the commissioner found "there ha[d] been a deterioration[,]" warranting entry of an amended order. Verbatim Report of Proceedings at 53.
The record does not reflect, and at oral argument the parties did not know, whether such an order was ever entered or what type of subsequent treatment, if any, Petitioner undertook. We note, however, that mere hours remained at that point on his 90-day commitment; entry of an order amending the terms of that less restrictive treatment would have been futile. Clearly the State intended for Dydasco to undergo an additional 180 days of treatment, rather than attempting to revive or alter the terms of the expiring 90-day treatment period. However, the commissioner granted Dydasco's motion to dismiss the petition for 180-day treatment on the grounds that the 3 days' notice required for 90-day involuntary commitments applied to petitions for 180-day commitments. The Honorable Ricardo S. Martinez denied the State's motion for revision, stating:
It is clear that the legislature intended to provide the same notice and due process rights to respondents answering 180-day petitions as to those respondents answering 90-day petitions by referencing RCW 71.05.31[sic] in the statute allowing subsequent petitions.
Clerk's Papers at 20.
The State appealed, and the Court of Appeals reversed, holding RCW 71.05.300 requires 3 days' notice of filing only for 90-day petitions which follow a 14-day period of intensive treatment. The court held those who, like Dydasco, were completing 90-day less restrictive treatment were not entitled to 3 days' notice of a petition for a 180-day commitment. The Court of Appeals reasoned:
[A] person undergoing less intensive treatment may not decompensate until the end of the treatment period so that a mental health professional will have less than three days in which to act. A person in less restrictive treatment is not subject to the close professional supervision of someone receiving 14-day intensive inpatient treatment.
In re Detention of Dydasco, 85 Wash.App. 535, 538, 933 P.2d 441 (1997). We granted review, and now reverse the Court of Appeals, affirming the decision of the trial court.
RCW 71.05 provides for involuntary commitment in stages. Initial detention is valid for 72 hours, after which a detainee must either be released or afforded a probable cause hearing. RCW 71.05.150-.210. Following a probable cause hearing, the court may order 14-day intensive treatment or 90-day less restrictive treatment, provided the State properly petitioned for the additional detention prior to the probable cause hearing. RCW 71.05.230. If the State seeks a further commitment, then the detainee is entitled to a full hearing and jury trial. RCW 71.05.240, .310. Following that hearing, the court may order 90 days of intensive or less restrictive treatment. When the hearing follows a period of 14-day intensive treatment, the petition for 90-day treatment shall be filed at least 3 days before expiration of the 14-day period of intensive treatment. RCW 71.05.300. The statute does not specify when a petition must be filed if, as in this case, a full hearing follows a 90-day period of less restrictive detention ordered at a probable cause hearing.
When a 90-day commitment is ordered after a full hearing, additional commitment for 180 days is allowed only if the State files a new petition and the detainee is afforded another full hearing. Successive 180-day commitments are permitted if the same requirements are fulfilled. RCW 71.05.320(2). Again, the statute does not specify when the petition for 180-day involuntary commitment must be filed or served.
RCW 71.05.300 provides in pertinent part:
The petition for ninety day treatment shall be filed with the clerk of the superior court at least three days before expiration of the fourteen-day period of intensive treatment.
*1114 RCW 71.05.320(2) provides in pertinent part:
The person shall be released from involuntary treatment at the expiration of the period of commitment imposed under subsection (1) of this section unless the superintendent or professional person in charge of the facility in which he is confined, or in the event of a less restrictive alternative, the designated mental health professional... files a new petition for involuntary treatment on the grounds that the committed person;
. . . .
(d) Continues to be gravely disabled.
. . . .
The hearing shall be held as provided in RCW 71.05.310, and if the court or jury finds that the grounds for additional confinement as set forth in this subsection are present, the court may order the committed person returned for an additional period of treatment not to exceed one hundred eighty days from the date of judgment. At the end of the one hundred eighty day period of commitment, the committed person shall be released unless a petition for another one hundred eighty day period of continued treatment is filed and heard in the same manner as provided in the subsection. Successive one hundred eighty day commitments are permissible on the same grounds and pursuant to the same procedures as the original one hundred eighty day commitment.
The Court of Appeals held the statutory 3-day notice requirement in RCW 71.05.300 applies only when a full hearing on a petition for 90-day commitment follows a 14-day period of intensive treatment. Petitioner now urges us to read the statute as requiring 3 days' notice when a 180-day commitment is sought.
The Legislature amended RCW 71.05.300 in 1987 to require that a petition for an additional 90 days of treatment following a 14-day intensive inpatient commitment be filed at least 3 days prior to expiration of that 14-day commitment. The Legislature did not amend RCW 71.05.320(2) relating to petitions for continuing treatment of persons completing 90- or 180-day involuntary treatment periods. Petitioner argues the Legislature intended to amend all statutes concerned with additional periods of involuntary commitment to include the 3-day notice requirement. Had the Legislature intended to require a time limitation for filing of 180-day petitions, the State counters, it had ample opportunity and would have done so.
The State is correct in pointing out repeal or amendment of a statute by implication is not favored in the law. In re Detention of R.S., 124 Wash.2d 766, 774, 881 P.2d 972 (1994) (citing Misterek v. Washington Mineral Prods., Inc., 85 Wash.2d 166, 168, 531 P.2d 805 (1975)). However, the Court of Appeals has previously, and persuasively, reasoned the procedural protections for 90-day petitions also apply to 180-day petitions.
In In re Detention of J.R., 80 Wash. App. 947, 912 P.2d 1062, review denied, 130 Wash.2d 1003, 925 P.2d 989 (1996), the Court of Appeals held RCW 71.05.290, which requires a petition for a 90-day commitment to be accompanied by supporting affidavits, also applies to 180-day commitments. J.R., 80 Wash.App. at 955, 912 P.2d 1062.
And in In re the Detention of R.P., 89 Wash.App. 212, 948 P.2d 856 (1997), the Court of Appeals held petitions for 180-day involuntary commitments must be supported by two affidavits from examining physicians or an examining physician and an examining mental health professional, as required under RCW 71.05.290. R.P., 89 Wash.App. at 217, 948 P.2d 856. The court stated:
[W]hile the statute does not set out the procedural requirements for a 180-day petition, it does state that the hearing is the same as that for a 90-day petition. The Legislature assured patients' due process rights for each duration of commitment. As the length of detention increases, the statute provides additional procedural rights. This is what we would expect because the deprivation of liberty increases each time. Therefore, it is unlikely that the Legislature intended to exclude the notice provision for patients who face the longest period of commitment. We construe statutes to effect their purpose and avoid unlikely or strained interpretations.

*1115 The more likely interpretation is that adopted by the court in [In re Detention of] J.R.: The Legislature intended all of the procedural requirements for the 90-day petition to apply in a 180-day petition. There is no support in law or logic for lessening the rights of a patient who faces a longer commitment.
R.P., 89 Wash.App. at 215-16, 948 P.2d 856 (footnotes omitted).
We agree. Extending the protections of RCW 71.05.300, which include the 3-day time limit, to 180-day petitions would insure that those facing the longest commitment possible are guaranteed at least the rights afforded those facing lesser periods of commitment.
The State argues restricting the 3-day limitation to 90-day petitions following 14-day intensive treatment is consistent with the statute's stated purpose to provide continuity of care. RCW 71.05.010(4). The State reasons, and the Court of Appeals agreed, that a person undergoing a 90-day period of less restrictive treatment may not decompensate until the end of the treatment period, giving the mental health professional fewer than 3 days in which to act. A person undergoing intensive 14-day treatment, however, is subject to close professional supervision, so it is not difficult to comply with the 3-day requirement.
The scenario envisioned by the State played out in this specific case. However, RCW 71.05 allows for intensive treatment for 90- or 180-day periods as well as the initial 14-day intensive period. The Court of Appeals agreed with the State that the 3-day requirement applies only following a 14-day intensive treatment period but does not explain why it does not apply following a 90- or 180-day intensive treatment period. Presumably, those undergoing longer periods of intensive treatment are also being closely supervised by professionals. Three days' notice of an additional commitment petition would not interfere in the majority of cases with continuity of care.
More importantly, the Equal Protection Clause requires that persons similarly situated with respect to the legitimate purposes of the laws receive like treatment. In re Personal Restraint of Knapp, 102 Wash.2d 466, 473, 687 P.2d 1145 (1984). "`Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made'." In re Personal Restraint of Young, 122 Wash.2d 1, 45, 857 P.2d 989 (1993) (quoting Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966)). When addressing the constitutionality of civil commitment statutes creating differing classes of persons, we apply rational basis scrutiny. In re Detention of Patterson, 90 Wash.2d 144, 149-50, 579 P.2d 1335 (1978), overruled on other grounds by Dunner v. McLaughlin, 100 Wash.2d 832, 676 P.2d 444 (1984); see also State v. Anderson, 132 Wash.2d 203, 209, 937 P.2d 581 (1997) (noting rational basis test applies in equal protection challenges not involving a suspect class or a fundamental right).
As pointed out above, the State's urged reading of the statute treats those completing 90-day less restrictive treatment differently from those completing 14-day intensive treatment; this might be appropriate in some cases. However, the "distinction made" under such a reading of the statute also treats those completing 90-day or 180-day intensive treatment differently from those completing 14-day intensive treatment: oddly, those undergoing longer periods of treatment receive less notice of the State's intention to seek an additional commitment than those completing 14-day treatment. No reason for such a distinction is found in the statute, and the State offers no rationale. The creation of these two classes of persons, even if unintentional, appears to be arbitrary. As such, it violates even a rational basis review.
We also note that less restrictive treatment can be revoked, as the State requested in this case, resulting in intensive treatment for a segment or even the remainder of the commitment period. RCW 71.05.340. We therefore believe the 3-day notice requirement should be extended to those completing 90- or 180-day treatment, regardless of whether, at the outset, it is intensive or less restrictive.
*1116 Because the Legislature has chosen to give 3 days' notice of further commitment proceedings to those completing 14-day treatment, equal protection requires the same notice be given to those completing 90- or 180-day commitments. See Anderson, 132 Wash.2d at 213, 937 P.2d 581. We reverse the Court of Appeals and affirm the decision of the trial court.
DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.