**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Detention of: | No. 50773-1-II |
| P.P. | |
| STATE OF WASHINGTON; JOHNATHAN SHARRETTE, PH.D.; and SUKHINDERPAL AULAKH, M.D., | PUBLISHED OPINION |
| Petitioners, | |
| v. | |
| P.P., | |
| Respondent. | |

BJORGEN, J. — The State filed a petition for involuntary commitment after the superior court declared P.P. incompetent to stand trial on felony charges. The superior court granted the petition for involuntary commitment, dismissed the felony charges against P.P., and ordered that P.P. be involuntarily committed for a period not to exceed 180 days.

P.P. appeals the involuntary commitment order, arguing that the superior court erred when it concluded that the law does not allow him to become a good faith voluntary patient. P.P. also argues that our court should remand this matter to the superior court for de novo review of the commissioner's findings of fact. P.P. concedes that the order is moot, but the State and P.P. both agree on the need to clarify whether an individual who has been found incompetent to stand trial on felony charges may become a good faith voluntary patient instead of being involuntarily committed. We agree and reach the merits because it is a matter of continuing and substantial public interest.

On the merits, we hold the law does not provide mentally ill persons found incompetent to stand trial for felony charges the legal opportunity to become good faith voluntary patients. We affirm the superior court's involuntary commitment order.

FACTS

In 2017, the State charged P.P. with three counts of felony indecent exposure and one count of voyeurism. The superior court found P.P. incompetent to stand trial, dismissed his criminal charges, and committed him to a state hospital for an involuntary 72-hour evaluation and treatment period for the purposes of civil commitment.

After the 72-hour evaluation, Dr. Sukhinderpal Aulakh and Dr. Johnathan Sharrette filed a petition for a 180-day involuntary civil commitment on the basis of former RCW 71.05.280(3) and (4) (2015). At the beginning of the involuntary civil commitment hearing, P.P. requested that he be found a good faith voluntary patient and that the petition be dismissed. The commissioner denied the motion, but invited the parties to brief the issue and continued the hearing.

At the next hearing, the commissioner determined that petitioners are required to prove that an individual is not a good faith voluntary patient at 90- and 180-day civil commitment hearings. The commissioner then heard testimony on this issue.

Dr. Sharrette testified that, in his opinion, he did not believe P.P. would in good faith seek voluntary treatment. He stated that P.P. recently lied to an evaluator during a competency evaluation. He also testified that P.P. had recently left a voluntary hospitalization after only seven days and that his explanation for doing so was because he felt the hospitalization was doing him no good. In addition, Dr. Sharrette testified that P.P. explained to him that he believed a computer controlled his physical, emotional, and hormonal body. Dr. Sharrette also provided

testimony regarding his concerns about medical compliance in the community, P.P.'s lack of insight into the benefit of treatment, and his long hospitalization history.

After hearing testimony from both Dr. Sharrette and P.P., who admitted that he lied to the competency evaluator to avoid potential hospitalization, the commissioner found that P.P. did not meet the criteria for a good faith voluntary patient. The commissioner further found that P.P. committed acts constituting the felony indecent exposure and that, due to his mental illness, he was likely to commit similar felony acts in the future. The commissioner entered an order for involuntary commitment not to exceed 180 days.

P.P. filed a motion for revision with the superior court, seeking to be found a good faith voluntary patient. The petitioners' then filed a cross motion for revision. At the hearing on the motions, the superior court found that P.P. would not be a good faith voluntary patient. Specifically, the superior court stated,

> Even if the good faith voluntary status is available, it's been demonstrated, as previously noted, that the respondent is not a good faith volunteer based on his failure to comply with voluntary treatment at the UW [University of Washington] Medical Center in 2015, when he left after seven days, because the treatment wasn't helping, as well as his admission to providing inaccurate information to skew the results of the competency evaluation and avoid further treatment and his admission that he wants to get out of treatment and that it doesn't really work.
>
> The most recent involuntary hospitalization is not helpful in establishing a track record because it doesn't establish that he's a good faith volunteer when he has the complete freedom to walk away.

Verbatim Report of Proceedings (Aug. 11, 2017) at 33-34.

On August 11, 2017, the superior court entered an order that denied P.P.'s motion for revision and granted the petitioners' cross motion to revise. The superior court also concluded that "RCW 71.05.280, and RCW 71.05.320 do not require Petitioners to prove 'good faith voluntary' status prior to civil commitment." Clerk's Papers (CP) at 135. Therefore, and

consistently with the arguments made, we read the superior court's ruling to conclude that the

State is not required to prove good faith voluntary status because P.P. did not have an

opportunity under the relevant statutes to become a good faith voluntary patient.  Based on this

conclusion, the order stated,

> The Court Commissioner's July 14, 2017 order is revised striking the "finding" on page 2, lines 8-9 that "during any commitment hearing, 14, 90, or 180 day hearing, the issue of voluntary admission may be raised" and replacing it with this Court's conclusion of law that petitioner is not required to prove "good faith voluntary status prior to civil commitment."

CP at 135-36.

P.P. appeals.

## ANALYSIS

### I. MATTERS OF CONTINUING AND SUBSTANTIAL PUBLIC INTEREST

P.P. concedes that his case is technically moot because the 180-day involuntary

commitment order has expired.  However, both P.P. and the State agree that we should decide his

case on the merits because the issue presented involves a matter of continuing and substantial

public interest.  Assuming without deciding that P.P.'s appeal is moot,[1] we agree that we should

reach the merits because this case involves a matter of continuing and substantial public interest.

Even if an appeal is moot, we may still reach the merits if it involves "matters of

continuing and substantial public interest."  *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496

P.2d 512 (1972).  The criteria to be considered in determining whether a continuing and

substantial public interest is involved include:  (1) the public or private nature of the question

---

[1] Although cited by neither party on appeal, we acknowledge the authority of *In re Det. of M.K.*, 168 Wn. App. 621, 625-30, 279 P.3d 897 (2012), which held that its appeal was not moot after an involuntary commitment period had expired.  *See also In the Matter of A.J.*, 196 Wn. App. 79, 81, 383 P.3d 536 (2016) (holding the same); *In re L.T.S.*, 197 Wn. App. 230, 233-34, 389 P.3d 660 (2016) (holding the same).

presented, (2) the desirability of an authoritative determination which will provide future guidance to public officers, and (3) the likelihood that the question will recur. *Sorenson*, 80 Wn.2d at 558.

Our Supreme Court has consistently stated that the need to clarify the statutory scheme governing civil commitment is a matter of continuing and substantial public interest. *See*, *e.g.*, *In re Det. of M.W. v. Dep't of Soc. & Health Servs.*, 185 Wn.2d 633, 649, 374 P.3d 1123 (2016); *In re Det. of R.S.*, 124 Wn.2d 766, 770, 881 P.2d 972 (1994); *Matter of Det. of Swanson*, 115 Wn.2d 21, 24-25, 804 P.2d 1 (1990); *In re Det. of LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986); *In re Det. of Cross*, 99 Wn.2d 373, 377, 662 P.2d 828 (1983).

P.P.'s first issue on appeal involves whether the superior court erred when it concluded he did not have an opportunity under the law to become a good faith voluntary patient. Applying the *Sorenson* criteria to this issue, we conclude that it is public in nature because it involves significant constitutional questions and statutory interpretation, an authoritative determination will provide future guidance to public officials, and given the relative frequency of involuntary commitments, the issue is certain to recur on a regular basis.

For these reasons, we address the merits of whether the superior court erred when it concluded P.P. did not have the opportunity under the law to become a good faith voluntary patient.

## II. GOOD FAITH VOLUNTARY STATUS

P.P. argues that the superior court erred when it concluded that the law does not allow him to become a good faith voluntary patient. He bases this argument on statutory, due process, and equal protection grounds. We disagree.

A.      Standard of Review

We review constitutional questions de novo, with a presumption that the challenged measures are constitutional. *M.W.*, 185 Wn.2d at 647. The party challenging a statute has the burden of proving that it is unconstitutional. *Id.*

We similarly review questions of statutory interpretation de novo. *In re Det. of Marcum*, 189 Wn.2d 1, 8, 403 P.3d 16 (2017). The primary objective of any statutory interpretation and construction inquiry is to determine and carry out the intent of the legislature. *In re Det. of Martin*, 163 Wn.2d 501, 506, 182 P.3d 951 (2008). If possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). When interpreting a statute, we first look to its plain language. *Martin*, 163 Wn.2d at 508. "If the plain language is subject to only one interpretation, our inquiry is at an end." *Id.* After consideration of all relevant statutory language, if "the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Campbell & Gwinn*, 146 Wn.2d at 12.

B.      Statutory Scheme

The question presented involves whether a mentally ill person must be given an opportunity to become a good faith voluntary patient when he or she comes before the superior court on a petition for involuntary commitment after having been declared incompetent to stand trial and having felony charges dismissed.

In general, a mentally ill person may be involuntarily committed under the Involuntary Treatment Act (ITA), chapter 71.05 RCW, by one of two avenues. The first avenue involves procedures initiated by mental health professionals under former RCW 71.05.150 (2015). A mental health professional may file a petition for initial detention or involuntary outpatient evaluation based on credible allegations that the person has a mental disorder and presents an imminent risk of harm to themselves or others or is gravely disabled. Former RCW 71.05.150(1)(a); former RCW 71.05.153 (2015); *In re Det. of D.W. v. Dep't of Soc. & Health Servs.*, 181 Wn.2d 201, 204, 332 P.3d 423 (2014). If there is probable cause to support the petition, and the person has refused or failed to accept appropriate evaluation and treatment voluntarily, the superior court may issue an order to detain the person at a designated evaluation and treatment facility for not more than a 72-hour evaluation and treatment period. Former RCW 71.05.150(2)(a). At the conclusion of the 72-hour commitment, a petition for an additional 14 days of involuntary intensive treatment or an additional 90 days of a less restrictive alternative to involuntary intensive treatment may be filed. Former RCW 71.05.230 (2016).

Among other requirements, such petitions may only be filed if the person has been advised of the need for voluntary treatment and the professional staff of the facility has evidence that he or she has not in good faith volunteered. Former RCW 71.05.230(2).

> Where a potential detainee has put her status as a good faith voluntary patient at issue, the burden is on the State to show by a preponderance of the evidence that the patient has not in good faith volunteered for appropriate treatment before involuntary treatment may be ordered.

*In re Det. of Kirby*, 65 Wn. App. 862, 870-71, 829 P.2d 1139 (1992). At the expiration of the 14-day period of intensive treatment, a person may be committed for further treatment if statutory grounds warranting additional commitment are met. Former RCW 71.05.280; former RCW 71.05.320 (2016).

The second avenue of involuntary commitment involves procedures after the dismissal of a felony charge under RCW 10.77.086. If the superior court determines a person is incompetent to stand trial, and criminal charges have been dismissed due to that incompetency, the person is sent to a state hospital for a 72-hour evaluation period for the purpose of filing a civil commitment petition. RCW 10.77.086(4). The evaluating physicians at the state hospital may file a civil commitment petition, which is for 180 days of involuntary treatment and is subject to the requirements and procedures of all other 180-day civil commitment petitions. Former RCW 71.05.280(3); former RCW 71.05.290 (2016). This second avenue bypasses the 14-day and 90-day requirements mandated under the first avenue of the ITA, and does not contain a similar option allowing voluntary treatment.

Thus, the applicable statutes do not provide to mentally ill persons, found incompetent to stand trial for felony charges, the legal opportunity to become good faith voluntary patients. To the extent P.P. is arguing that the statute itself affords him the opportunity to become a good faith voluntary patient in this situation, his argument fails.

With this statutory backdrop in mind, we next turn to P.P.'s constitutional challenges.

C.     Substantive Due Process

P.P. argues that a patient in his position has a Fourteenth Amendment due process right to become a good faith voluntary patient despite being found incompetent to stand trial and having felony charges dismissed. We disagree.

Substantive due process prohibits the government from interfering with a fundamental right unless the infringement is narrowly tailored to serve a compelling state interest. *In re Det. of Morgan*, 180 Wn.2d 312, 324, 330 P.3d 774 (2014). Civil commitment must be based on findings of both mental illness and dangerousness in order to meet the requirements of

substantive due process. *M.W.*, 185 Wn.2d at 649. Our Supreme Court has stated, "Because civil commitment laws deprive individuals of their fundamental right to liberty, they must be narrowly tailored to serve compelling government interests." *Id.* We thus apply that requirement to our review of RCW 10.77.086 and the relevant provisions of chapter 71.05 RCW.

We recognize that *M.W.* also stated that substantive due process "'requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed.'" 185 Wn.2d at 649 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 79, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992)). The quoted language suggests rational basis review, not the explicit requirement of *M.W.* that civil commitment law be narrowly tailored to serve compelling state interests. *Id.* As noted, however, *M.W.* expressly requires that civil commitment laws "be narrowly tailored to serve compelling government interests." *Id.* We do not read *M.W.* to mean that its somewhat orphaned reference to "some reasonable relation" is to rescind its explicit requirement of narrow tailoring to serve a compelling state interest, especially when that stricter requirement, a fortiori, requires a reasonable relation in order to be narrowly tailored.

This conclusion is strengthened by the nature of *Foucha*. In that decision, the Supreme Court held that one found not guilty by reason of insanity is entitled to release when he has recovered his sanity or is no longer dangerous, relying on a prior decision. 504 U.S. at 77. The Court recited the "some reasonable relation" rule in holding that because Foucha was no longer suffering from mental disease or illness, he could not be held under its prior decision that one is entitled to release upon recovering sanity. *Id.* at 79. This recitation cannot be read as holding that substantive due process requires only rational basis review of civil commitment laws, especially when that doctrine was only discussed later in the opinion. *Id.* at 80. For these reasons, we ask whether the statute is narrowly tailored to serve a compelling state interest.

P.P. relies on *In re Detention of Chorney*, 64 Wn. App. 469, 825 P.2d 330 (1992), for the proposition that he had a due process right to become a good faith voluntary patient. In *Chorney*, the superior court granted a civil commitment petition that involuntarily detained Chorney for 14 days of treatment. *Id*. at 471. Chorney argued the superior court erred when it failed to make a determination on the question of whether he had "not in good faith volunteered" within the meaning of former RCW 71.05.230(2). *Id*. at 471. Division One of our court reasoned that because of the potential "curtailment of liberty effected under the civil commitment statute, the right to due process requires the intervention of an impartial third party to ensure that procedural requirements have been met." *Id*. at 477. Accordingly, the court held that where a potential detainee has put her status as a good faith voluntary patient at issue, the burden is on the State to show by a preponderance of the evidence that the patient has not in good faith volunteered for appropriate treatment before involuntary treatment may be ordered. *Id*. at 477-78.

For a number of reasons, *Chorney* does not support P.P.'s claims. First, *Chorney* does not hold that all mentally ill persons have an unqualified statutory right to be considered a good faith voluntary patient. Second, and more importantly, *Chorney* involved ITA procedures initiated by a mental health professional under former RCW 71.05.150, not ITA procedures subsequent to a finding of incompetence to stand trial and the dismissal of felony charges under RCW 10.77.086. The only portion of chapter 71.05 RCW that requires the superior court to consider whether a patient would be voluntary is former RCW 71.05.230(2), and that provision applies to 14-day commitment hearings, not a petition for 180-day commitment following a determination of incompetence to stand trial. Former RCW 71.05.280(3), former RCW 71.05.290, and former RCW 71.05.320 are the specific provisions that address petitions following a finding of incompetency to stand trial and the dismissal of felony charges, and there

is no mention of good faith voluntary status in those provisions. *Chorney* does not apply to those who have had felony charges dismissed because the superior court declared them incompetent to stand trial.

P.P. cites former RCW 71.05.050 (2015) to support his argument that, when read as a whole, the statute provides the option to become a good faith voluntary patient subsequent to a finding of incompetency to stand trial and the dismissal of felony charges. Former RCW 71.05.050(1) provides, in part, as follows:

> Nothing in this chapter shall be construed to limit the right of any person to apply voluntarily to any public or private agency or practitioner for treatment of a mental disorder, either by direct application or by referral.

This statute merely clarifies that the ITA does not prohibit individuals from seeking treatment outside the procedures of chapter 71.05 RCW. It also specifies the rights of mentally ill persons who have sought voluntary treatment and the procedures for hospital staff if a voluntary patient requesting discharge presents an imminent likelihood of serious harm or is gravely disabled, among other things. Read in context, this provision does not create a liberty interest that would trigger the protections of substantive due process in P.P.'s case.

P.P. has made no argument that RCW 10.77.086 and the relevant provisions of chapter 71.05 RCW are not narrowly tailored to serve compelling government interests. Our Supreme Court, on the other hand, has held that certain provisions of chapter 71.05 RCW do not violate substantive due process and are narrowly tailored to serve compelling government interests. *See, e.g.*, *M.W.*, 185 Wn.2d at 649-53 (addressing former RCW 71.05.320). For reasons similar to those outlined in *M.W.*, we likewise conclude that the provisions at issue (RCW 10.77.086, former RCW 71.05.230, former RCW 71.05.280, former RCW 71.05.290, and former RCW 71.05.320) serve the touchstones of substantive due process relevant to the civil commitment

process—ensuring that initial and continued confinement is based on an individual's mental illness and dangerousness. *See M.W.*, 185 Wn.2d at 649-53.

The aspects of the ITA at issue are narrowly tailored to serve a very particular group in need of proper care who pose a threat to public safety—mentally ill persons found incompetent to stand trial for felonies. The ITA serves a number of important governmental interests. Most importantly, the ITA aims to protect the health and safety of persons suffering from mental disorders and to protect public safety. *See* former RCW 71.05.010(a)-(g) (2015). Our Supreme Court has held that the State has a compelling interest in protecting the community from mentally ill persons who pose a danger to themselves and others and in providing care to those who are unable to care for themselves. *M.W.*, 185 Wn.2d at 649-53. As discussed above, the ITA does not afford those found incompetent to stand trial on felony charges the option of becoming voluntary patients. Denying persons found incompetent to stand trial for felonies and who suffer from a mental disorder the potential ability to circumvent the ITA by claiming the opportunity to become good faith voluntary patients directly serves the ends of protecting public safety and providing care to those with mental disorders.

We hold that RCW 10.77.086 and the relevant provisions of chapter 71.05 RCW satisfy substantive due process, because the statutes are narrowly drawn to further the State's compelling interest in ensuring public safety and in ensuring proper treatment of those with mental disorders who have been declared incompetent to stand trial.

D.     Equal Protection

P.P. next argues that similarly situated persons have a Fourteenth Amendment equal protection right to become good faith voluntary patients despite findings of incompetency to stand trial and dismissal of felony charges. We disagree.

Our Supreme Court has said,

Civil commitment statutes that treat classes of individuals differently are subject to the rational basis standard, which requires that all members of a class are treated alike, that there is a rational basis for distinguishing the class from others, and that the classification is rationally related to the law's purpose.

*M.W.*, 185 Wn.2d at 664. The rational basis standard is relaxed and highly deferential. *In re Det. of Turay*, 139 Wn.2d 379, 410, 986 P.2d 790 (1999). Under this standard a legislative classification will be upheld unless it rests on grounds entirely unrelated to the achievement of legitimate state objectives. *Id.* The burden is on the party challenging the classification to show that it is entirely arbitrary. *Id.*

P.P. argues that if the superior court's ruling is allowed to stand, similarly situated persons could be involuntarily committed without the protections afforded by the statutory scheme; specifically, without the opportunity to become a good faith voluntary patient. P.P. claims essentially that (1) all persons who have been involuntarily committed belong to the same class, (2) there is no rational basis for distinguishing between persons involuntarily committed by way of former RCW 71.05.150 and RCW 10.77.086, and (3) it is entirely arbitrary to allow some persons involuntarily committed the opportunity to become good faith voluntary patients, but not others.

P.P. relies on *Matter of Detention of Dydasco*, 135 Wn.2d 943, 959 P.2d 1111 (1998), to conclude that "there is no rational basis to hold that respondents facing short, 14-day commitment have the right to undergo voluntar[]y commitment, but respondents facing the significantly longer 180-day commitment are foreclosed from doing so." Br. of Appellant at 12. *Dydasco*, however, does not support P.P.'s contention.

Dydasco claimed he received insufficient notice of the State's intention to seek a 180-day involuntary commitment. 135 Wn.2d at 945. On direct appeal, Division One held that former

RCW 71.05.300 requires 3 days' notice of filing for only 90-day petitions that follow a 14-day period of intensive treatment. *Id*. at 947. The court held that persons, like Dydasco, who were completing 90-day less restrictive treatment were not entitled to 3 days' notice of a petition for a 180-day commitment. *Id*.

Our Supreme Court disagreed and reversed. The court stated that providing less notice to persons subject to longer commitments was irrational and violated the equal protection clause. *Id*. at 952. Further, the court reasoned that even though the statute was silent as to the notice requirement, because the legislature chose to give 3 days' notice of further commitment proceedings to persons completing 14-day treatment, equal protection requires the same notice be given to persons completing 90-day or 180-day commitments. *Id*. Accordingly, our Supreme Court held that Dydasco was entitled to 3 days' notice of the State's intent to seek additional commitment. *Id*.

*Dydasco* is distinguishable. While there was no rational basis for providing less notice to persons subject to longer commitments, there is a rational basis for treating those found incompetent to stand trial differently from other detainees. Simply put, persons involuntarily committed via RCW 10.77.086 (and the relevant provisions of chapter 71.05 RCW) have been accused of felonies, declared incompetent to stand trial, and have had their felony charges dismissed. Persons with mental disorders committed via former RCW 71.05.150 have not necessarily been accused of any crimes. Thus, assuming all persons with mental disorders who have been involuntarily committed are members of the same class, there is a rational basis for upholding the differing treatment within that class.

We hold that denying persons with mental disorders who have been declared incompetent to stand trial and have had their felony charges dismissed the legal opportunity to become good

faith voluntary patients does not violate equal protection, since it is rationally related to legitimate governmental interests. First, all individuals incompetent to stand trial for felony charges are subject to the same uniform procedure under chapter 71.05 RCW. Second, the legislature has compelling state interests in distinguishing certain persons with mental disorders who have been accused of committing crimes from other persons with mental disorders subject to involuntary treatment. *See, e.g.*, *In re Det. of Patterson*, 90 Wn.2d 144, 151, 579 P.2d 1335 (1978), *overruled on other grounds by In re Det. of McLaughlin*, 100 Wn.2d 832, 676 P.2d 444 (1984). Third, the statute is rationally related to those state interests because the distinction—whether a person with a mental disorder has the legal opportunity to become a good faith voluntary patient—depends on whether that person was accused of crimes, found incompetent, and had criminal charges dismissed due to incompetency.

We are aware that individuals incompetent to stand trial for felony charges are presumed innocent and that there has been no adjudication of guilt or innocence. Still, in these circumstances the State has at least presented evidence sufficient to establish probable cause in order to bring the charges against the accused. The government has strong interests in ensuring public safety and in ensuring proper treatment for all persons with mental disorders. This statute singles out a particular set of such persons—those found incompetent to stand trial for felony charges—and does not allow them to become good faith voluntary patients. It allows persons with mental disorders who have not been not been found incompetent to stand trial the opportunity to become good faith voluntary patients because they ostensibly pose less of a risk to themselves and the public.

Furthermore, the ITA imposes special provisions and procedures that attach to individuals committed following the dismissal of felony charges in order to provide for public

safety. These provisions include: (1) prosecutor, law enforcement, victim, and witness notifications upon release from commitment, (2) the ability for a prosecutor to intervene in and object to an individual's release, (3) public safety review panel oversight for violent felony charges, and (4) specialized recommitment procedures for violent charges. *See* former RCW 71.05.425 (2013); former RCW 71.05.325 (2000); former RCW 71.05.330 (1998); former RCW 71.05.335 (1986); former RCW 71.05.340 (2015); RCW 10.77.270. If a person suffering from a mental disorder who had felony charges dismissed due to incompetency was given the opportunity to become a good faith voluntary patient, these statutory protections would be compromised and perhaps lost. The distinctions in the statutory scheme for individuals incompetent to stand trial for felony charges are rationally related to the State's legitimate interests.

Based on the analysis above, we hold the superior court did not err when it concluded that the law does not provide P.P. with the opportunity to become a good faith voluntary patient.

E.      Remand to Superior Court

P.P. finally argues that this court should remand to the superior court for de novo review of P.P.'s good faith voluntary status. Specifically, P.P. claims that because the superior court reversed the commissioner's conclusion of law, the superior court never reviewed de novo the commissioner's findings of fact. At oral argument, however, P.P. withdrew this assignment of error. Accordingly, we decline to address this argument.

CONCLUSION

We hold the ITA does not provide persons with mental disorders found incompetent to stand trial for felony charges the legal opportunity to become good faith voluntary patients. We hold that RCW 10.77.086 and the relevant provisions of chapter 71.05 RCW satisfy substantive

16

due process, because the statute is narrowly drawn to further the State's compelling interest in ensuring public safety and in ensuring proper treatment of persons with mental disorders. We also hold that barring persons with mental disorders who have been declared incompetent to stand trial for felony charges from becoming good faith voluntary patients does not violate equal protection, because it is rationally related to legitimate governmental interests.

We affirm the superior court's involuntary commitment order.

_Bjorgen, J._

Bjorgen, J.

We concur:

_Lee, A.C.J._

Lee, A.C.J.

_Melnick, J._

Melnick, J.

17