## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 39347-0-III |
| | ) | |
| A.A. | ) | |
| | ) | ORDER WITHDRAWING |
| | ) | OPINION |
| | ) | |

Having considered both parties' motion to modify the court's opinion filed February 1, 2024, the Court agrees the opinion should be modified.

IT IS ORDERED, the motion to modify the opinion is granted.

IT IS FURTHER ORDERED, this Court's opinion filed February 1, 2024, is hereby withdrawn and a new opinion will be filed this day. The opinion will be modified to substitute the appellant's initials for his name throughout the opinion.

PANEL: Judges Staab, Lawrence-Berrey, Cooney

FOR THE COURT:



GEORGE FEARING
Chief Judge



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | |
| | ) | No.  39347-0-III |
| A.A. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

STAAB, J. — Under Washington law, when a person who has been involuntarily committed for treatment at a hospital for a period of 90 or 180 days is determined to no longer need impatient care, the State must work with the treatment provider to "develop an individualized discharge plan" and "arrange for a transition to the community . . . within 14 days of the determination."  RCW 71.05.365.  After A.A. was found incompetent and felony charges were dismissed, the court granted the State's petition for involuntary commitment and ordered A.A. to be held for up to 90 days of involuntary treatment.

On appeal, A.A. assigns error to the order authorizing involuntary treatment, arguing that the order violated RCW 71.05.365 because the evidence presented at the

No. 39347-0-III
*In re the Detention of A.A.*

hearing indicated that he was at "baseline" and would not improve with additional inpatient treatment. The State responds that the requirements of RCW 71.05.365 apply only after a person has been involuntarily committed for 90 or 180 days. The parties disagree on whether A.A.'s detention during his criminal case qualified as "involuntary commitment" for the purposes of RCW 71.05.365. We hold that A.A.'s pre-trial commitment for evaluation and restoration under chapter 10.77 RCW does not qualify as involuntary commitment for treatment under RCW 71.05.365. Thus, the trial court's initial order of civil commitment did not violate RCW 71.05.365.

BACKGROUND

A.A. is an individual who has been diagnosed with both substance abuse disorder and schizoaffective disorder, bipolar type. He was admitted to Eastern State Hospital (ESH) on May 5, 2022 for a 15-day competency evaluation period for the purpose of restoring his capacity following several criminal charges. When restoration was unsuccessful, on June 27, 2022, the "Yakima County Superior Court ordered that Mr. A.A. undergo a second period of competency restoration treatment for up to 90 days as well as an evaluation regarding his competency to proceed to trial." Clerk's Papers (CP)

2

at 11. On September 16, 2022, after restoration efforts failed, the criminal charges were dismissed pursuant to RCW 10.77.086(4).[1]

That same day, the court signed an order committing A.A. to ESH for 72 hours for evaluation for the purpose of filing a civil commitment petition under the Involuntary Treatment Act (ITA), ch. 71.05 RCW. ESH filed a petition with the court for 180-day involuntary treatment under chapter 71.05 RCW. Specifically, it filed this petition because it was determined that A.A. was incompetent, had "committed acts constituting a felony, and as a result of [his] behavioral health disorder, present[ed] a substantial likelihood of repeating similar acts." CP at 2. A treating psychologist at ESH provided an affidavit supporting the petition for involuntary treatment. She concluded that A.A., as a result of his behavioral health disorder, was "gravely disabled." CP at 5.

On October 27, 2022, a hearing was held for the involuntary commitment of A.A.. Upon agreement of the parties, ESH sought only 90 days of involuntary treatment on the

---

[1] "When any defendant whose highest charge is a class C felony other than assault in the third degree under RCW 9A.36.031(1)(d) or (f), felony physical control of a vehicle under RCW 46.61.504(6), felony hit and run resulting in injury under RCW 46.52.020(4)(b), a hate crime offense under RCW 9A.36.080, a class C felony with a domestic violence designation, a class C felony sex offense as defined in RCW 9.94A.030, or a class C felony with a sexual motivation allegation is admitted for inpatient competency restoration with an accompanying court order for involuntary medication under RCW 10.77.092, and the defendant is found not competent to stand trial following that period of competency restoration, the court shall dismiss the charges pursuant to subsection (7) of this section."

sole basis of grave disability. At the hearing, one of his doctors testified that A.A.'s behavior had improved and that he was considered to be at baseline. The doctor indicated that getting A.A. to baseline took significant doses of medication over the months and the doctor was still worried about A.A.'s aggressiveness. In her opinion, A.A. required further inpatient care at ESH to establish a discharge plan. Additionally, another doctor testified that less restrictive alternative treatment was not in A.A.'s best interest, due to the lack of supportive housing and A.A.'s intent to stop medication. After hearing this testimony, the court found A.A. gravely disabled, remanded A.A. into the custody of DSHS, and ordered 90 days of intensive inpatient treatment.

A.A. now appeals the trial court's commitment order.

ANALYSIS

A.A. contends that the trial court erred in ordering him civilly committed to ESH for 90 days of inpatient treatment because A.A. had already been at ESH for four months and was no longer benefitting from inpatient treatment. He asserts that under these conditions, RCW 71.05.365 required his release within 14 days. The issue requires us to interpret RCW 71.05.365.

When interpreting a statute, a court's "fundamental objective is to ascertain and give effect to the legislature's intent." *Leander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 405, 377 P.3d 199 (2016). Construction of a statute is a question of law reviewed de

novo. *State v. Engel*, 166 Wn.2d 572, 576, 578, 210 P.3d 1007 (2009). "Where the language of a statute is clear, [the] legislature intent is derived from the [plain] language of the statute." *Id.* at 578. In order to determine a statute's plain meaning, courts should examine the "statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." *Dep't of Ecology v. Campbell & Gwinn*, LLC., 146 Wn.2d 1, 10, 43 P.3d 4 (2002). If after this inquiry the plain meaning is susceptible to more than one reasonable meaning, "the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Id.* at 12.

"In general, a . . . person may be involuntarily committed under the 'Involuntary Treatment Act' (ITA), chapter 71.05 RCW, by one of two avenues." *See In re Detention of P.P.*, 6 Wn. App. 2d 560, 568, 431 P.3d 550 (2018). "The first avenue involves procedures initiated by mental health professionals" while the "second . . . involves procedures after the dismissal of a felony charge under RCW 10.77.086." *Id.* at 568-69. An important distinction here is that under the former avenue, after "a 72-hour evaluation and treatment period, . . . a petition for an additional 14 days of involuntary intensive treatment or an additional 90 days of a less restrictive alternative . . . may be filed. *Id.* at 569. However, under the latter avenue, and relevant here, a petition may bypass "the 14-day and 90-day requirements mandated under the first avenue of the ITA." *Id.* at 569-70.

5

No. 39347-0-III
*In re the Detention of A.A.*

In essence, after the "72-hour evaluation period, . . . the evaluating physician[ ]" may move forward directly with a petition "for 180 days of involuntary treatment" as occurred here. *Id*. at 569.

Once "a person has been determined to be incompetent pursuant to RCW 10.77.086(7)" following dismissal of felony charges, "then the professional person in charge of the treatment facility or his or her professional designee or the designated crisis responder may directly file a petition . . . for 90-day treatment under RCW 71.05.280(1), (2), or (4)." RCW 71.05.290(3). Additionally, they may "petition for 180-day treatment under RCW 71.05.280(3)." *Id*. Among other things, and applicable here, "a person may be committed for further treatment pursuant to RCW 71.05.320" if "[s]uch person is gravely disabled." RCW 71.05.280(4).

In this case, after ESH filed its petition seeking involuntarily commitment for 180 days, the parties agreed that ESH would proceed on a request for only a 90-day involuntary commitment for treatment. If a court finds a person is gravely disabled and that the best interests of either that person or another will not be served by less restrictive treatment, "the court shall remand him or her to the custody of the department of social and health services or to a facility certified for ninety day treatment by the department for a further period of intensive treatment not to exceed ninety days from the date of judgment." RCW 71.05.320(1)(a). Here, the court found that A.A. suffers from both

6

No. 39347-0-III
*In re the Detention of A.A.*

"substance disorder" and "schizoaffective disorder, bipolar type." CP at 37. As a result of these behavioral health disorders, it found A.A. gravely disabled and ordered inpatient treatment at ESH for 90 days.

After an initial commitment for treatment, the ITA provides for the release of persons who are no longer benefitting from inpatient services and should be transitioned into the community. "When a person has been involuntarily committed for treatment to a hospital for a period of 90 or 180 days," and it is determined "that the person no longer requires . . . inpatient" treatment, the responsible agency and hospital shall work together "to develop an individualized discharge plan, and arrange for transition to the community . . . within 14 days of the determination." RCW 71.05.365.[2]

---

[2] RCW 71.05.365: "When a person has been involuntarily committed for treatment to a hospital for a period of 90 or 180 days, and the superintendent or professional person in charge of the hospital determines that the person no longer requires active psychiatric treatment at an inpatient level of care, the behavioral health administrative services organization, managed care organization, or agency providing oversight of long-term care or developmental disability services that is responsible for resource management services for the person must work with the hospital to develop an individualized discharge plan, including whether a petition should be filed for less restrictive alternative treatment on the basis that the person is in need of assisted outpatient treatment, and arrange for a transition to the community in accordance with the person's individualized discharge plan within 14 days of the determination."

7

A.A. argues that the conditions of RCW 71.05.365 were met and required his transition into the community rather than a 90-day civil commitment. In response to the State's argument that his earlier detention was not a civil commitment for treatment, A.A. argues that chapters 10.77 and 71.05 RCW are related statutes and should be read in tandem. Thus, he contends that his detention under chapter 10.77 RCW should qualify as "involuntary commitment for treatment" under RCW 71.05.365. As further support for this argument, he points out that the term "commitment" is defined the same under both chapters. *See* RCW 10.77.010(3); 71.05.020(1).

We disagree that the criminal commitment provisions under chapter 10.77 RCW are the same as the civil commitment provisions under chapter 71.05 RCW. While the two chapters concern the detention, evaluation, and treatment of persons with mental illness, they have distinct goals, and apply different procedures at different stages of a criminal case. Chapter 10.77 RCW provides procedures to determine the competency of a person charged with a crime, restoration efforts, and commitment of the criminally insane following acquittal of criminal charges by reason of insanity. *See* RCW 10.77.060(1)(e), .086, .084(1)(b), .110.

Here, A.A. had been ordered to undergo competency restoration at ESH. Once restoration was proved unsuccessful, his criminal charges were dismissed. Pursuant to RCW 10.77.086(7)(a) and because A.A. had previously engaged in inpatient

competency restoration services for this case, the court ordered a 72-hour hold for the

purpose of filing a civil commitment petition.

Civil, or involuntary commitment is governed by chapter 71.05 RCW.  As noted

above, when a defendant's competency cannot be restored and criminal charges are

dismissed, a petition may be filed seeking involuntary commitment for treatment.  Here,

A.A.'s initial detention at ESH was for competency evaluation and restoration under

chapter 10.77 RCW.  The court's 90-day civil commitment was the first time A.A. had

been civilly committed for mental health treatment under chapter 71.05 RCW.

In support of his argument that "involuntarily committed for treatment" has the

same meaning in both chapters, A.A. points to RCW 71.05.030, which provides that

"[p]ersons suffering from a behavioral health disorder may not be involuntarily

committed for treatment of such disorder except pursuant to provisions of this chapter,

[or] chapter 10.77 RCW," along with several other chapters.[3]  It is true that in addition to

providing procedures for competency evaluation and restoration, chapter 10.77 RCW also

provides for the treatment of those who have been found criminally insane.  RCW

---

[3] RCW 71.05.030: "Persons suffering from a behavioral health disorder may not be involuntarily committed for treatment of such disorder except pursuant to provisions of this chapter, chapter 10.77 RCW, chapter 71.06 RCW, chapter 71.34 RCW, transfer pursuant to RCW 72.68.031 through 72.68.037, or pursuant to court ordered evaluation and treatment not to exceed ninety days pending a criminal trial or sentencing."

10.77.120. But A.A. was not acquitted by reason of insanity so this portion of chapter 10.77 RCW did not apply to him.

Finally, we reject A.A.'s constitutional challenge. A.A. provides a brief paragraph arguing that in addition to violating the ITA, the court's order "raises constitutional concerns." Appellant's Br. at 9. Specifically, A.A. provides that pursuant to due process, people may be civilly committed only to the extent necessary. One of A.A.'s providers testified that A.A. had "stabilized," was "at baseline," and only required continued inpatient care to create a discharge plan. *Id.* However, aside from this short paragraph and quote from the provider, A.A. does not challenge any of the court's findings that he was gravely disabled or provide meaningful argument of the issue. "Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review." *See State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008), *rev'd on other grounds*, 170 Wn.2d 117, 240 P.3d 143 (2010).

Prior to his charges being dismissed, A.A. was detained for competency evaluation and restoration; he was not involuntarily committed for treatment. Following a hearing, the trial court found A.A. gravely disabled and involuntarily committed

No. 39347-0-III
*In re the Detention of A.A.*

A.A. for 90 days at ESH.  Under these circumstances, RCW 71.05.365 does not apply and A.A. was not entitled to be released.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:


_____
Lawrence-Berrey, A.C.J.


_____
Cooney, J.

11