IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LUCID GROUP USA, INC., | No. 86123-9-I |
| Appellant, | |
| | DIVISION ONE |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF LICENSING, | PUBLISHED OPINION |
| Respondent. | |

DíAZ, J. — Lucid Group USA, Inc. (Lucid Group) wishes to continue to sell in Washington the motor vehicles of its corporate sibling, Lucid USA, Inc. (Lucid USA), which manufactures the vehicles. The Department of Licensing (DOL) denied Lucid Group's new motor vehicle dealer license application, finding that RCW 46.96.185(1)(g) prohibits Lucid Group from selling cars and thereby "competing" with dealers of "any make or line" because it is an "affiliate" of Lucid USA. An administrative law judge (ALJ) affirmed the DOL's denial. Lucid Group disputes that interpretation of RCW 46.96.185(1)(g) and asks us to reverse the denial of its application. Alternatively, Lucid Group argues RCW 46.98.185(1)(g) is unconstitutional under Washington's privileges and immunities clause, and it also brings federal due process and equal protection claims. We affirm the ALJ.

I.     BACKGROUND

Lucid USA designs and manufactures electric vehicles.  Lucid Group sells Lucid USA's vehicles.  In August 2021, Lucid USA and Lucid Group simultaneously applied for licenses with the DOL.  Lucid USA applied for a motor vehicle manufacturing license.  Lucid Group applied for a new motor vehicle dealer license.  In June 2022, the DOL notified Lucid Group of its intent to deny its motor vehicle dealer license application and cited RCW 46.96.185(1)(g) of the Franchise Act (the Act), chapter 46.96 RCW.  In September 2022, the DOL issued Lucid USA a motor vehicle manufacturing license.

In June 2022, Lucid Group requested an administrative hearing to appeal the denial of its application.  Lucid Group and the DOL subsequently filed cross-motions for summary judgment before the ALJ.

In December 2022, the ALJ granted the DOL's motion for summary judgment and denied Lucid Group's motion.  The ALJ concluded the purpose of RCW 46.96.185(1)(g) and the Franchise Act "is multi-fold: to protect dealers from the disparity in bargaining power with manufacturers, to protect the public, and to maintain fair competition *among dealers*."  (emphasis added).  The ALJ further held that, if it granted Lucid Group's application, that order "would place [Lucid Group] at a distinct financial advantage over other dealers."  The ALJ's order did not address Lucid Group's constitutional claims as the ALJ stated it did "not have authority to address constitutional issues."  Lucid Group appealed the order to the DOL's director.  In February 2023, the DOL's director affirmed the ALJ's order.

In March 2023, Lucid Group petitioned the superior court for review.  In

2

August 2023, the superior court transferred the matter to this court.[1]

## II.    ANALYSIS

A.    Statutory Interpretation of RCW 46.96.185(1)(g)

  1.  Standards of Review

The Administrative Procedure Act, chapter 34.05 RCW, governs review of a final decision by the DOL's director.  RCW 34.05.510.  Moreover, "appellate review of administrative decisions is generally limited to the administrative record." Residents Opposed to Kittitas Turbines v. Energy Facility Site Evaluation Council, 165 Wn.2d 275, 300-01, 197 P.3d 1153 (2008).  The "burden of demonstrating the invalidity of agency action is on the party asserting invalidity," here, Lucid Group. RCW 34.05.570(1)(a).

That said, we review summary judgment orders de novo for whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).  "The moving party has the burden of showing that there is no genuine issue as to any material fact."  Indoor Billboard/Wash., Inc. v. Integra Telecom of

---

[1] Numerous automotive dealer associations filed amicus briefs in support of DOL. The Washington State Auto Dealers Association's brief addressed both Lucid Group's statutory and constitutional arguments.  The National Automobile Dealers Association's brief focused on the constitutional arguments.  The final brief, from various state-level associations, primarily compared the Franchise Act and RCW 46.96.185(1)(g) to other states' statutes.  Br. of Amicus Curiae Ga. Auto. Dealers Ass'n et al. at 12 (Georgia), 13 (Illinois), 14 (Mississippi), 15 (New Jersey), 16 (North Carolina), 17 (Ohio), 19 (Pennsylvania).

Wash., Inc., 162 Wn.2d 59, 70, 170 P.3d 10 (2007). However, "[w]hen parties file cross motions for summary judgment, questions of law determine the outcome if there are no genuine issues of material fact." Michel v. City of Seattle, 19 Wn. App. 2d 783, 789, 498 P.3d 522 (2021). Regardless, on "summary judgment review, we may affirm the trial court's decision on any basis within the record." Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 624, 246 P.3d 822 (2011).

Here, the ALJ concluded, and the parties do not dispute, that the "material facts are not in dispute" and the "only dispute is one of law, namely, whether the Franchise Act applies to [Lucid Group] when it has no independent dealers."

We review issues of statutory interpretation de novo. Pal v. Dep't of Soc. & Health Servs., 185 Wn. App. 775, 781, 342 P.3d 1190 (2015). Even so, "agency interpretations of statutes are accorded deference only if '(1) the particular agency is charged with the administration and enforcement of the statute, (2) *the statute is ambiguous*, and (3) the statute falls within the agency's special expertise.'" Fode v. Dep't of Ecology, 22 Wn. App. 2d 22, 33, 509 P.3d 325 (2022) (emphasis added) (quoting Bostain v. Food Express, Inc., 159 Wn.2d 700, 716, 153 P.3d 846 (2007)). Ultimately, however, this court is not bound by any agency interpretation as courts have the "'ultimate authority to interpret a statute.'" Port of Tacoma v. Sacks, 19 Wn. App. 2d 295, 304, 495 P.3d 866 (2021) (quoting Bostain, 159 Wn.2d at 716).

"When interpreting a statute, the court's fundamental objective is to ascertain and give effect to the legislature's intent." Lenander v. Dep't of Ret. Sys., 186 Wn.2d 393, 405, 377 P.3d 199 (2016). We begin with the plain language of

4

the statute and its context within the broader statutory scheme. Id. Statutes "must be harmonized with other provisions, if at all possible" and interpreted so "'all the language is given effect and no portion is rendered meaningless or superfluous.'" Jackson v. Fenix Underground, Inc., 142 Wn. App. 141, 145-46, 173 P.3d 977 (2007) (quoting Kilian v. Atkinson, 147 Wn.2d 16, 21, 50 P.3d 638 (2002)). Further, "a court must not add words where the legislature has chosen not to include them." Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

"If the meaning of the statute is plain on its face, then we must give effect to that meaning as an expression of legislative intent." Lenander, 186 Wn.2d at 405. "If, after this inquiry, the statute remains ambiguous or unclear, it is appropriate to resort to aids of construction and legislative history." Id. "Statutory language is ambiguous when it is susceptible to more than one reasonable interpretation." In re Estate of Garwood, 109 Wn. App. 811, 814, 38 P.3d 362 (2002). "The statute is not necessarily ambiguous simply because of two different interpretations. The question, however, is whether those interpretations are sufficiently reasonable to warrant further inquiry." Fraternal Ord. of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Ord. of Eagles, 148 Wn.2d 224, 242, 59 P.3d 655 (2002).

2. Discussion

This appeal concerns the applicability of RCW 46.96.185(1)(g), which states:

> Notwithstanding the terms of a franchise agreement, *a* manufacturer, . . . *affiliated entity*, or other person . . . under common control with a manufacturer . . . shall not . . . *Compete* with a new motor vehicle dealer *of any make or line* by *acting in the capacity* of a new motor

vehicle dealer, or by owning, operating, or controlling, whether directly or indirectly, a motor vehicle dealership in this state.

(Emphasis added). RCW 46.96.185(1)(g) then lists seven exceptions to the above restriction. RCW 46.96.185(1)(g)(i)-(vii). The DOL can deny license applications that would violate chapter 46.96 RCW. RCW 46.70.045.

Lucid Group argues the "Franchise Act—including section RCW 46.96.185(1)(g) . . . functions to 'regulate the relationship between manufacturers and *their* dealers in order to protect those dealers and benefit the car-buying public.'" Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc., 169 Wn. App. 111, 120, 279 P.3d 487 (2012) (emphasis added) (internal quotation marks omitted). Further, it claims, "[c]onsistent with the function of the Act, section 46.96.185(1)(g) is inapplicable where, as here, a manufacturer has no franchised dealers and therefore has no dealer relationship to regulate."

We disagree based on our reading of the plain language of the statute, when read in the context of its statutory scheme. Lenander, 186 Wn.2d at 405.

a. Plain Language of RCW 46.96.185

The Franchise Act expressly incorporates the definitions contained in RCW 46.70.011. RCW 46.96.020. There, a "'[m]anufacturer' means any person, firm, association, corporation, or trust, resident or nonresident, who manufactures or assembles new and unused vehicles or remanufactures vehicles in whole or in part." RCW 46.70.011(8). RCW 46.96.185(1) applies its terms equally to affiliates of manufacturers by stating without qualification that "a manufacturer, distributor, factory branch, or . . . wholly or partially owned subsidiary, *affiliated* entity . . . shall not" undertake the actions enumerated therein. (Emphasis added.) It is

6

undisputed that Lucid USA is a manufacturer and that Lucid Group sells Lucid USA's vehicles as an affiliated or sibling entity as both companies are owned by Atieva, Inc. See BLACK'S LAW DICTIONARY 72 (12th ed. 2024) (defining "affiliate" as a "corporation that is related to another corporation by shareholding or other means of control; a subsidiary, parent, or *sibling* corporation.") (emphasis added). Therefore, the prohibitions of RCW 46.96.185(1) apply equally to Lucid Group and Lucid USA.

Deconstructing the statute, RCW 46.96.185(1)(g) proscribes that "*a* manufacturer" or "affiliated entity . . . shall not . . . [c]ompete[2] with *a* new motor vehicle dealer of *any make or line*"[3] in one relevant[4] way. (Emphasis added.)

---

[2] A standard dictionary defines "compete" as "to seek or strive for something (as a position, possession, reward) for which others are also contending." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 463 (1993). "[C]ompetition" is defined as the "struggle for commercial advantage; the effort or action of two or more commercial interests to obtain the same business from third parties." BLACK'S LAW DICTIONARY 357 (12th ed. 2024); see also Samish Indian Nation v. Dep't of Licensing, 14 Wn. App. 2d 437, 442, 471 P.3d 261 (2020) ("'Where the legislature has not defined a term, we may look to dictionary definitions, as well as the statute's context, to determine the plain meaning of the term.'") (quoting In re Det. of J.N., 200 Wn. App. 279, 286, 402 P.3d 380 (2017)). There is no dispute that Lucid Group and other sellers of automobiles are seeking "to obtain the same business" from third party purchasers of vehicles.

[3] The Federal Motor Vehicle Safety Standards define "make" as "a name that a manufacturer applies to a group of vehicles or engines." 49 C.F.R. § 565.12 (emphasis omitted). "Line means a name that a manufacturer applies to a family of vehicles within a make which have a degree of commonality in construction, such as body, chassis or cab type." Id. (emphasis omitted). There is no dispute that other sellers of automobiles have makes and lines, so defined.

[4] Another way in which a manufacturer or an affiliate may not compete with a car dealer is "by owning, operating, or controlling, whether directly or indirectly, a motor vehicle dealership in this state." RCW 46.96.185(1)(g). The DOL asserts in passing that Lucid Group "opened two vehicle dealerships in Seattle." However, the DOL does not claim Lucid Group is violating the Franchise Act by owning a dealership in some capacity. As such, this alternative prohibition is inapplicable to

7

Namely, a manufacturer or an affiliate may not compete with a car dealer "by acting in the capacity of a new motor vehicle dealer." RCW 46.96.185(1)(g). Recently, our Supreme Court interpreted the term "acting in the capacity" as "indicat[ing] the legislature's intent to capture those who *do the type of work* . . . both formally and informally." Dobson v. Archibald, 1 Wn.3d 102, 109, 523 P.3d 1190 (2023) (discussing a contractor registration statute) (emphasis added) (quoting RCW 18.27.080). A "dealer" is "one that makes a business of buying and selling goods esp. without altering their condition." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 581 (1993) (listing automobiles as an example). Thus, RCW 46.98.185(1)(g) intends to prohibit certain entities that "do the type of work" a dealer, i.e., buying and selling new motor vehicles.

Importantly, the introductory clause of RCW 46.98.185(1)(g) makes clear that this prohibition applies "[n]otwithstanding the terms of a franchise agreement," i.e., irrespective of the nature or content of a dealer's corporate arrangement or agreement with a manufacturer. Thus, Lucid Group falls within RCW 46.98.185(1)(g)'s purview even if it lacks a franchise or any formal agreement with Lucid USA.[5]

In sum, we hold that the plain language of RCW 46.96.185(1)(g) "captures" Lucid Group, meaning Lucid Group as an affiliate of Lucid USA cannot compete with a dealer that sells vehicles of "any make or line." Dobson, 1 Wn.3d at 109. In

---

the current appeal. The material undisputed fact is that Lucid USA sells its vehicles through Lucid Group.

[5] That said, the record contains portions of a "Dealer Sales and Service Agreement" between Lucid USA and Lucid Group. Nothing in this opinion turns on the content of that contract.

8

other words, RCW 46.98.185(1)(g)'s prohibitions are not limited to a manufacturer competing only with "their" own dealers or dealerships, as Lucid Group asserts. As such, we hold that, had the DOL issued Lucid Group a dealer license, it would have permitted a violation of RCW 46.98.185(1)(g). In turn, RCW 46.70.045 authorizes the DOL to deny of Lucid Group's license application.

The legislature's selective use of broad language in RCW 46.98.185(1)(g) bolsters this interpretation. Specifically, the legislature chose to use the indefinite article "a" before "a manufacturer" and "a new motor vehicle dealer" in that statute. RCW 46.98.185(1)(g). Similarly, the legislature used a very broad term to define who a manufacturer or an affiliate could not compete with, i.e., a dealer of "any make or line." Id. See, e.g., Dep't of Ecology v. City of Spokane Valley, 167 Wn. App. 952, 965, 275 P.3d 367 (2012) ("Use of a definite rather than indefinite article is a recognized indication of statutory meaning" and indicated "'the individual in question is undetermined, unidentified, or unspecified.'") (internal quotation marks omitted) (quoting State v. Ose, 156 Wn.2d 140, 146, 124 P.3d 635 (2005)); Shepler v. Terry's Truck Center, Inc., 25 Wn. App. 2d 67, 79-80, 522 P.3d 126 (2022) (same).

The use of these indefinite articles contrasts with narrower language in two exceptions to the statute's prohibitions. RCW 46.96.185(1)(g)(v)(D) exempts from unfair competition manufacturers inter alia whose market power is more equal to dealerships under "*their* franchise agreements with the manufacturer." Similarly,

9

RCW 46.98.185(1)(g)(vii) exempts from unfair competition certain manufacturers[6] inter alia which own a "dealership that sells new vehicles that are only of *that* manufacturer's makes or lines." (Emphasis added.)

As such, the legislature's shift from broad language within RCW 46.98.185(1)(g)—i.e., the use of indefinite articles and "any make or line"—to narrower phrasing in the exceptions "indicat[es]" the broad scope of the former, RCW 46.98.185(1)(g), is intentional. Spokane Valley, 167 Wn. App. at 965. "'[W]hen the legislature uses different words in the same statute, we presume the legislature intends those words to have different meanings.'" Peterson v. Dep't of Soc. & Health Servs., 28 Wn. App. 2d 16, 22, 534 P.3d 869 (2023) (alteration in original) (internal quotation marks omitted) (quoting Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd., 182 Wn.2d 342, 353, 340 P.3d 849 (2015)). Thus, subject to narrowly drawn exceptions, the legislature meant to regulate all competition between all manufacturers or affiliates who sell or trade vehicles as any dealer would, and not just competition between manufacturers and *their* dealers.

Further, Lucid offers no interpretation that "harmonize[s]" both the broad language of RCW 46.98.1851(g) and the narrow language of the exceptions, without rendering parts of the statute superfluous. Jackson, 142 Wn. App. at 145-46; Ralph v. State Dep't of Nat. Res., 182 Wn.2d 242, 248, 343 P.3d 342 (2014) ("we cannot 'simply ignore' express terms. We must interpret a statute as a whole

---

[6] That is, those manufactures that "held a vehicle dealer license in this state on January 1, 2014." RCW 46.98.185(1)(g)(vii).

so that, if possible, no clause, sentence, or word shall be superfluous, void, or insignificant.") (citation omitted); Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 588, 192 P.3d 306 (2008) ("Statutes are to be read together, whenever possible, to achieve a harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.").

In response, Lucid Group first argues that the word "capacity" (in the phrase "acting in the capacity") means "'a position, character, or role either duly assigned or assumed without sanction.'" Hanson v. Carmona, 1 Wn.3d 362, 374, 525 P.3d 940 (2023) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 330 (2002)). Armed with this definition, Lucid argues that the statute is prohibiting manufacturers only from "assum[ing] the role of their *independent* dealers" and, "because it does not have any" independent dealers, Lucid USA or Group "cannot usurp" such a role. (Emphasis added). However, as discussed above, the prohibitions of RCW 46.96.185(1)(g) apply in the first instance, not just to competition with independent dealers, but to any dealers of "any make or line." And Lucid Group wrongly tears the word "capacity" from its context in the phrase "by acting in the capacity" of a dealer, which—as also explained above—points to a functional definition for entities that "do the type of work" a dealer, i.e., selling and trading new motor vehicles.[7]

---

[7] As part of this argument, Lucid Group also argued that the term "'new motor vehicle dealer' [] does not mean *anyone* who sells vehicles, but instead only independent dealers selling vehicles pursuant to a franchise or contract with a manufacturer." See Wash. Ct. of Appeals oral argument, Lucid Group USA v. Dep't of Licensing, No. 86123-9-I (Sept. 13, 2024) at 6 min., 57 sec. through 7 min., 9 sec. video recorded by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-

Lucid Group next claims RCW 46.96.185(1)(g)'s introductory clause ("[n]otwithstanding the terms of any franchise agreement") clarifies the section "functions to regulate the relationship between traditional manufacturers and *their* franchised dealers." (Emphasis added). In so arguing, Lucid Group relies on Continental Cars, Inc. v. Mazda Motor of Am., Inc., No. C11-5266-BHS, 2011 WL 4026793 (W.D. Wash. 2011) (court order). Id. at 13.

Indeed, Continental Cars held that similar "notwithstanding" language in the Franchise Act showed a "legislative intent to balance power between *the* dealer and the manufacturer," further finding that the Franchise Act "sets out the baseline from which new automotive manufacturers and dealers cannot bargain below." 2011 WL 4026793, at *5 (emphasis added) (citing RCW 46.96.150(4)). However, Lucid Group over-interprets the holding in Continental Cars as (a) seeking to define the entire and exclusive purpose of the Franchise Act, as (b) regulating only the relationship between a manufacturer and *their* dealer, when it does and says neither. On the contrary, Continental Cars' undifferentiated use of the definite article "the" and the plural is equally consistent with the Act's purpose of regulating the relationship between manufacturers and *any* dealer. State v. Neher, 52 Wn.

---

2024091212/?eventID=2024091212. This argument is quickly dispensed with. First, that definition nowhere contains the word "independent"; Lucid Group simply injects that concept for its own ends. Second, a "'[n]ew motor vehicle dealer' means a motor vehicle dealer engaged in the business of . . . dealing in new motor vehicles . . . under a franchise . . . agreement, *or* contract with the manufacturer of the new motor vehicles." RCW 46.96.020(10) (emphasis added). Here, it is undisputed that Lucid Group sells Lucid USA's vehicles—not on some kind of honor system—but through some kind of written contract. Finally, Lucid Group's argument ignores the more relevant text of RCW 46.96.185 that its prohibition applies "[n]otwithstanding the terms of a franchise agreement."

App. 298, 300, 759 P.2d 475 (1988) ("'the' can sometimes be read as 'a'.") (citing BLACK'S LAW DICTIONARY 4 (4th rev. ed. 1968)).  At most, the case stands for the proposition that regulating franchise agreements is merely one way, among others, of regulating the industry.

    b.  <u>The Broader Statutory Context and Statutory Scheme</u>

The broader statutory context, including the Franchise Act's sweeping legislative findings at RCW 46.96.010, also belie Lucid Group's cramped interpretation of RCW 46.96.185(1)(g).  While the Franchise Act was motivated in part by "a substantial disparity in bargaining power between automobile manufacturers and *their* dealers," the legislature also found that "maintenance of fair competition among dealers [plural] *and others* is in the public interest, and that the maintenance of strong and sound dealerships is essential to provide continuing and necessary reliable services to the consuming public in this state and to provide stable employment to the citizens of this state."  RCW 46.96.010 (emphasis added).

In other words, the Franchise Act seeks to protect dealers, dealerships, consumer, and indeed the public's interests by maintaining fair competition between all dealers and all manufacturers.  <u>Id.</u>  It would be a blinkered view of the Franchise Act (and inconsistent with the express language of RCW 46.96.185(1)(g)) to believe it could achieve those ends by simply focusing on the relationship between a manufacturer and its and only its dealers.  Accordingly, the Franchise Act looks beyond that singular relationship to regulate "competition among dealers *and others*."  RCW 46.96.010 (emphasis added).

In response, Lucid Group cites to <u>Tacoma Auto Mall</u>, which also discusses the above legislative findings but ultimately is inapposite. There, this court addressed how another section of the Franchise Act, former RCW 46.96.200 (1994), affected the standing of "prospective purchasers," not dealers. <u>Tacoma Auto Mall</u>, 169 Wn. App. at 122-23. In that context, this court held the Act's findings show the "express purpose of the Franchise Act is to regulate the relationship between manufacturers and 'their dealers' in order to protect those dealers and benefit the car-buying public." <u>Id.</u> at 120 (quoting RCW 46.96.010).

As with <u>Continental Cars</u>, we hold that <u>Tacoma Auto Mall</u>'s general recitation of this singular legislative finding does not stand for the proposition that the Franchise Act has a single purpose, as Lucid Group asserts. <u>Id.</u> Nowhere in the opinion did we hold that the entire statutory scheme considered *solely* that relationship. Instead, <u>Tacoma Auto Mall</u>'s holding as to RCW 46.96.200 is consistent with the Act's intent to govern competition between dealers and any other party acting as a dealer for "any make or line." RCW 46.96.185(1)(g). This interpretation permits us to harmonize both RCW 46.96.200 and RCW 46.96.185(1)(g). <u>Jackson</u>, 142 Wn. App. at 145-46.

Finally, Lucid Group cites to numerous additional provisions of the Franchise Act, which it claims show that "*all* of the provisions of the Franchise Act are focused on regulating the relationship between manufacturers and *their* dealers." (Emphasis added). Lucid cites to:

- RCW 46.96.030, which discusses restrictions on a manufacturer's "termination, cancellation, or nonrenewal of the franchise."
- RCW 46.96.185(1)(a), (b), and (p), each which prohibit various

14

specified "discriminat[ory]" or "adverse" actions "against a new motor vehicle dealer."

- RCW 46.96.200, which states a "manufacturer shall not withhold consent to the sale, transfer, or exchange of a franchise to a qualified buyer" and provides a framework for such transactions.
- RCW 46.96.230, which states a "manufacturer . . . shall pay . . . payment or other compensation due under a manufacturer incentive program."

In other words, Lucid Group asks us to read an implied narrowness of purpose within the Franchise Act based on the above provisions. However, none of these provisions or any cited authorities thereto affirmatively state the Franchise Act *solely* focuses on traditional dealer relationships or agreements with manufacturers. Further, courts "must not add words where the legislature has chosen not to include them." Cananwill, 150 Wn.2d at 682. Instead, the Franchise Act's legislative findings and RCW 46.98.185(1)(g)'s broad terms demonstrate a multifaceted focus for the Franchise Act.

Lucid also cites to RCW 46.96.185(1)(h), arguing that "[u]nlike section (1)(g), section (1)(h) contains no exceptions for manufacturers operating service facilities prior to 2014." It further argues if "DOL's broad reading of section (1)(g) were correct, then section (1)(h) would prohibit manufacturers expressly authorized to own dealerships, such as Tesla (which avails itself of the exception of (1)(g)(vii)), from providing service in Washington. Lucid also argues that this reading of (1)(h) would "prohibit Lucid from performing warranty work in the state, even though DOL has expressly agreed that it can" thus leading to absurd results. Id.; Jesperson v. Clark County, 199 Wn. App. 568, 578, 399 P.3d 1209 (2017) ("we construe a statute to avoid absurd results.").

15

Indeed, RCW 46.96.185(1)(h) prohibits manufacturers or affiliates from competition with dealers by "owning, operating, or controlling, whether directly or indirectly, a service facility in this state for the repair or maintenance of motor vehicles under the manufacturer's new car warranty and extended warranty."

Contrary to Lucid Group's argument, however, RCW 46.96.185(1)(g) and (1)(h) can be easily harmonized by interpreting it to allow manufacturers who fall within an exception from (1)(g) to act as a dealer and thus engage in the activities listed within (1)(h).  Again, we must seek to harmonize all language of the Franchise Act.  Jackson, 142 Wn. App. at 145-46; Am. Legion Post No. 149, 164 Wn.2d at 588 ("This court assumes the legislature does not intend to create inconsistent statutes.").

In short, we hold that the intent of the "statute is plain on its face"; it not only regulates traditional dealer-manufacturer relationships, but also the relationships of manufacturer's affiliates and dealers of any make or line.  Lenander, 186 Wn.2d at 405.  Even if the statute is susceptible to "different interpretations," we hold those interpretations are not "sufficiently reasonable to warrant further inquiry."  Tenino Aerie, 148 Wn.2d at 242.  As such, we need not reach its legislative history and "must give effect to" the above plain meaning as an "expression of legislative intent."  Lenander, 186 Wn.2d at 405.

B.      Constitutionality of RCW 46.96.185(1)(g)

"When presented with claims under both the state and federal constitutions, we review the state constitutional arguments first."  Am. Legion, 164 Wn.2d at 605. Lucid Group asserts Washington's privileges and immunities clause as well as

federal equal protection and due process challenges. "[W]hether an agency order, or the statute supporting the order, violates constitutional provisions is a question of law that we review de novo." Pal, 185 Wn. App. at 781.

    1.  Washington Privileges and Immunities Clause

    Washington's privileges and immunities clause states that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." CONST. art. I, § 12. This clause "was intended to prevent favoritism and special treatment for a few to the disadvantage of others." Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc., 196 Wn.2d 506, 518, 475 P.3d 164 (2020).

    "[W]e have subjected legislation to a two-part test under this 'privileges' prong of article I, section 12 analysis." Schroeder v. Weighall, 179 Wn.2d 566, 572-73, 316 P.3d 482 (2014). "First, we ask whether a challenged law grants a 'privilege' or 'immunity' for purposes of our state constitution." Id. at 573. "Not every benefit constitutes a 'privilege' or 'immunity' for purposes of the independent article I, section 12 analysis. Rather, the benefits triggering that analysis are only those implicating 'fundamental rights . . . of . . . state . . . citizenship.'" Id. (quoting State v. Vance, 29 Wash. 435, 458, 70 P. 34 (1902)). Second, "[i]f the answer is yes, then we ask whether there is a 'reasonable ground' for granting that privilege or immunity." Id. (quoting Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 145 Wn.2d 702, 731, 42 P.3d 394 (2002) (Grant County I)). Under this test, "a court will not hypothesize facts to justify a legislative distinction." Id. at 574.

17

"Rather, the court will scrutinize the legislative distinction to determine whether it *in fact* serves the legislature's stated goal." Id. (alteration in original).

As to whether a privilege or immunity was granted, Lucid Group argues that our Supreme Court "has repeatedly held that the right to 'carry on business' within the State implicates a fundamental right." Vance, 29 Wash. at 458. Lucid relies on numerous authorities to support its above argument, including Vance, Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 83 P.3d 419 (2004) (Grant County II), American Legion, and Ass'n of Wash. Spirits. Id. Lucid Group's reliance on each is inapposite.

Long ago, our Supreme Court in Vance expressed and, more recently, it reiterated in Grant County II the general principle that "[p]rivileges and immunities therein . . . secure in each state to the citizens of all states the right to remove to and *carry on business therein*." Vance, 29 Wash. at 458 (emphasis added); Grant County II, 150 Wn.2d at 813 (quoting Vance, 29 Wash. at 458). However, even more recently, our Supreme Court, also reiterated that the "'right . . . to carry on business'" is "implicated only in very narrow circumstances." Wash. Food Indus. Ass'n v. City of Seattle, 1 Wn.3d 1, 28, 524 P.3d 181 (2023) (quoting Vance, 29 Wash. at 458).

In exploring the counters of these "narrow circumstances," our Supreme Court recently reviewed its decision regarding a licensing statute, which only required licenses for "'transient'" photographers and not "'resident'" photographers. Id. (quoting Ralph v. City of Wenatchee, 34 Wn.2d 638, 639, 209 P.2d 270 (1949)). The court noted that the right to carry on business was implicated, by way of

18

example, where the ordinance was "designed 'substantially to prohibit activity of nonresident photographers.'" Id. at 29 (quoting Ralph, 34 Wn.2d at 642).

In contrast, in American Legion, our Supreme Court also considered "whether the right to smoke in a private facility is a privilege or immunity." 164 Wn.2d at 606. There, the appellant asserted "it is similarly situated to a hotel, where smoking is allowed in some rooms, because they are both 'private facilities' and 'places of employment.'" Id. at 607. The court observed that "the privileges and immunities clause is violated if a statute treats two businesses that are selling the same product differently." Id. Nonetheless, our Supreme Court rejected the appellant's argument, finding that the challenged law "does not prevent any entity from engaging in business, which is a privilege for purposes of article I, section 12" and "[i]nstead, the Act merely prohibits smoking within a place of employment." Id. at 608. That is, our Supreme Court flatly held "there is no privilege involved," meaning "there is no violation of article I, section 12" because the appellant was not entirely blocked from doing business. Id. This decision rested on "the distinction between a lawful business which a citizen has the right to engage in and one in which he may engage only as a matter of grace of the state," a distinction which "must be constantly in mind." Randles v. Wash. State Liquor Control Bd., 33 Wn.2d 688, 694, 206 P.2d 1209 (1949).

Moreover, in Ass'n of Wash. Spirits, the court reiterated that the "'right to . . . carry on business therein,' [is] a long-recognized privilege under our constitution." 182 Wn.2d at 360 (quoting Grant County II, 150 Wn.2d at 812-13). While true, the court also held that Washington courts "have also rejected attempts to assert the

19

right to carry on business when a narrower, nonfundamental right is truly at issue." Id. (citing Am. Legion, 164 Wn.2d at 607-08). There, our Supreme Court rejected an "argument that the assignment of different licensing fees for different abilities to sell and distribute spirits burdens its fundamental right to carry on business" as "overbroad." Id. at 362. Specifically, the challenged law did "not unfairly discriminate against a class of businesses to the benefit of another class of the same businesses; it merely assigns a uniform fee to the class of individuals in Washington who sell spirits." Id. The court further stated that "we have never held that the right to sell liquor is a fundamental right or privilege." Id.

In short, Lucid Group's assertion that it has a fundamental right to "carry on business" is overgeneralized, as the right is narrower than Lucid asserts, triggered when an appellant is entirely blocked from doing business, when the law unfairly discriminates between businesses, with an eye to the type of industry at issue.

Taking these principles in reverse order, similar to Ass'n of Wash. Spirits, Lucid Group fails to cite any authority specifically creating a fundamental right to sell cars. Id. Further, RCW 46.96.185(1)(g) equally prohibits all manufacturers or their affiliates from "compet[ing]" with dealers outside of a few exceptions. That is, the law "does not unfairly discriminate against a class of businesses to the benefit of another class of the same businesses; it merely assigns a uniform" prohibition in the manner it may wish to carry out its business. Id.

Finally, as in American Legion, Lucid Group is "not prevent[ed] . . . from engaging in business" within the motor vehicle market, only that its preferred method ("direct-sales-only") is not allowed. 164 Wn.2d at 606; Wash. Food Indus.

Ass'n, 1 Wn.3d at 29 (appellant there "does not allege that it is effectively prohibited from engaging in business as a result of the ordinance, only that it receives disfavored treatment."). Instead, if Lucid Group wishes to enter the motor vehicle market, it merely needs to do so in a manner consistent with the Franchise Act and RCW 46.98.185(1)(g).

Therefore, we hold that the Franchise Act implicates no fundamental right and, thus, does not violate the privileges and immunities clause. Schroeder, 179 Wn.2d at 573.[8]

## 2. Federal Due Process and Equal Protection

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

---

[8] Even if a fundamental right was implicated, we would hold that RCW 46.96.185(1)(g) is based on reasonable grounds. Lucid Group's reliance on three cases to argue otherwise is inapposite. In re Camp, 38 Wash. 393, 396-97, 80 P. 547 (1905) (disapproved of a law allowing "peddling" as the "distinctions are arbitrary and no proper basis for classification."); City of Seattle v. Dencker, 58 Wash. 501, 504, 108 P. 1086 (1910) (disapproved of a law requiring licenses for vending machines as there was "no claim that the business discriminated against here affects in any way the public morals or the business interests of the community . . . but purely in the way of competition."); State v. Robinson Co., 84 Wash. 246, 250, 146 P. 628 (1915) (disapproved of a law that "authorize[d] cereal and flour mills to sell mixed and unmixed feeding stuffs, while other persons selling the same feeding stuffs are required to comply with the provisions of the act."). Unlike those cases, more than mere protectionism or favoritism motivates RCW 46.96.185(1)(g). From the beginning of the Act, RCW 46.98.185(1)(g) articulates a goal of responding to observed "power disparities" between manufacturers and dealers as the "sale of motor vehicles in this state vitally affect the general economy of the state and the public interest and public welfare." RCW 46.96.010. These goals constitute reasonable grounds for the Act.

In asserting federal due process and equal protection claims, Lucid appears to concede that a federal fundamental right is not implicated as it applies a rational basis test. Indeed, where no fundamental right or suspect classification is implicated, "a rational basis review" is required "under the Due Process and Equal Protection clauses of the Fourteenth Amendment." Craigmiles v. Giles, 312 F.3d 220, 222, 229 (6th Cir. 2002). Rational basis review requires "only that the regulation bear some rational relation to a legitimate state interest" which carries a "'strong presumption of validity.'" Id. at 223-24 (quoting Walker v. Bain, 257 F.3d 660, 668 (6th Cir. 2001)). "Still, 'notwithstanding the strong presumption of constitutionality, the rational basis test 'is not a toothless one.'" Romero v. Dep't of Soc. & Health Servs., 30 Wn. App. 2d 323, 346, 544 P.3d 1083 (2024) (quoting Nielsen v. Dep't of Licensing, 177 Wn. App. 45, 53, 309 P.3d 1221 (2013)) (internal quotation marks omitted).

Lucid primarily relies on Giles and St. Joseph Abbey v. Castille, 712 F.3d 215 (5th Cir. 2013). Both cases struck down laws under a rational basis test that required caskets be sold exclusively by licensed funeral directors or funeral homes. Giles, 312 F.3d at 222; St. Joseph Abbey, 712 F.3d at 217-18. Both cases explained that the challenged laws had little to no justification beyond "naked protectionism" or ignored the power dynamics between the parties involved. Giles, 312 F.3d at 229 (finding that the law was nothing but a "naked attempt to raise a fortress protecting the monopoly rents that funeral directors extract from consumers."); St. Joseph Abbey, 712 F.3d at 225-26 (rejecting the argument that "exclusivity will assure purchasers of caskets informed counsel" as "third-party

sellers do not have the same incentive as funeral home sellers to engage in deceptive sales tactics" meaning the law actually put consumers "at a greater risk.").

Here, as noted above, the Franchise Act's legislative findings stress the importance of ensuring "fair competition" in light of the "substantial disparity in bargaining power" between manufacturers and dealers. RCW 46.96.010. As such, the legislature's articulated goal of preventing manufacturer's abuse of power motivated the Franchise Act generally and RCW 46.96.185(1)(g) specifically. In other words, the Act and RCW 46.98.185(1)(g) were not unjustified "protectionism" or ignorant of "deceptive sales tactics" like the statutes challenged in Giles, 312 F.3d at 229, and St. Joseph Abbey, 712 F.3d at 225.

As a final note, Ford Motor Co. v. Texas Dep't of Transp., 264 F.3d 493 (5th Cir. 2001), is instructive. There, the Fifth Circuit considered whether a Texas law properly prohibited Ford's retail website. Id. at 498. Similar to RCW 46.96.185(1)(g), the Texas law prohibited manufacturers from directly or indirectly owning, operating, or acting as a dealer.[9] Id. Ford filed suit, alleging that the law violated inter alia Ford's due process and equal protection rights under the United States constitution. Id. The Fifth Circuit held the law properly sought "to prevent vertically integrated companies from taking advantage of their incongruous market position" and prevent unfair practices arising therefrom which "are legitimate state

---

[9] Specifically, the Texas law provided that, "'[e]xcept as provided by this section, a manufacturer or distributor may not directly or indirectly . . . own an interest in a dealer or dealership . . . operate or control a dealer or dealership; or . . . act in the capacity of a dealer.'" Ford Motor Co., 264 F.3d at 498 (quoting former Tex. Rev. Civ. Stat. art. 4413(36), § 5.02C(c)(1)-(3)).

interests" and satisfied rational basis review.  Id. at 503 (quote), 510 (holding).

In short, we hold there is adequate constitutional basis for RCW 46.98.185(1)(g) as it "bear[s] some rational relation to a legitimate state interest." Giles, 312 F.3d at 223.[10]  Thus, Lucid Group's federal constitutional challenge fails.

## III.  CONCLUSION

For the reasons above, we affirm the ALJ's decision upholding the DOL's denial of Lucid Group's new motor vehicle dealer application.

Díaz, J.

WE CONCUR:

Coburn, J.

Dwyer, J.

---

[10] Lucid Group also challenges the constitutionality of RCW 46.96.185(1)(g)(vii) which exempts from unfair practices any "manufacturer that held a vehicle dealer license in this state on January 1, 2014."  Lucid Group avers that only Tesla is covered by the exception.  At oral argument, Lucid Group clarified "the remedy here . . . is not to strike down that exception."  Wash. Ct. of Appeals oral argument, supra at 17 min., 37 sec. through 17 min., 43 sec.  Instead, the "exception means that the application of the restriction to Lucid violates its privileges and immunities rights, because it's discriminatory," thereby undermining the reasonableness of the provision.  Id. at 20 min., 1 sec. through 20 min., 11 sec.

However, as discussed above, this appeal does not implicate a fundamental right, making Washington's privileges and immunities clause ab initio inapplicable. Schroeder v. Weighall, 179 Wn.2d 566, 572-73, 316 P.3d 482 (2014).  Further, this court asked Lucid Group at oral argument if it challenged this exception under equal protection and it responded "no, we assert that the . . . broader restriction to Lucid violates its privileges or immunities rights."  Wash. Ct. of Appeals oral argument, supra at 20 min., 11 sec. through 20 min., 24 sec.  As such, we need not address whether RCW 46.96.185(1)(g)(vii) satisfies federal rational basis.

24